**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**LAS CRUCES DIVISION**

| | | |
|---|---|---|
| **JONATHAN FELPS, Individually and On Behalf of All Others Similarly Situated,** | § § § | |
| | § | **Civil Action No.** |
| **Plaintiffs,** | § | |
| | § | **2:18-CV-811 RB-GJF** |
| **v.** | § | |
| | § | |
| **MEWBOURNE OIL COMPANY, INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**PLAINTIFFS' OPPOSED MOTION FOR EXPEDITED CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND JUDICIALLY-SUPERVISED NOTICE UNDER SECTION 216(b) AND BRIEF IN SUPPORT**

Plaintiff Jonathan Felps ("Plaintiff" or "Named Plaintiff") on behalf of himself and all others similarly situated ("Class Members" herein) file this Motion for Expedited Conditional Certification and Judicially-Supervised Notice Under Section 216(b).

## I. INTRODUCTION

Named Plaintiff and Class Members worked as Lease Operators for Mewbourne Oil Company, were paid a salary, and were not paid any additional compensation for their overtime hours. They were each misclassified as exempt from the overtime protections of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

Named Plaintiff requests that the Court conditionally certify a class of similarly situated Lease Operators, direct prompt disclosure by Defendant of contact information for potential class members, and authorize Plaintiffs' counsel to notify prospective class members of this lawsuit.

## II. LEGAL BASIS OF CLAIMS

The FLSA requires an employer to pay compensation to non-exempt employees at a rate

not less than one and one-half that employee's regular rate of pay for all hours worked over 40 in a workweek. 29 U.S.C. § 207(1). Under 29 U.S.C. § 216(b), this Court is authorized and empowered to certify a class of workers who are "similarly situated" to the Named Plaintiff. Cases involving oil-field misclassification are routinely conditionally certified as class actions.[1]

## III. FACTUAL BACKGROUND

### A. Defendant misclassified its similarly situated Lease Operators as "exempt" from overtime under the FLSA.

Defendant is an oil and gas production company, managing all phases of oilfield operations from "prospect to pipeline." Dkt. 1 ¶ 15; Dkt. 4 ¶ 15. Defendant does business in Texas, New Mexico, and Oklahoma, including in the Permian and Anadarko Basins. *Id.* Plaintiffs were Lease Operators (also called Pumpers) for Defendant. Plf.'s Declaration, attached as Exhibit A, ¶ 3. Plaintiff was a Lease Operator for Defendant, working out of Defendant's Hobbs, New Mexico location from approximately 2014 until October 2016. *Id.* ¶ 2. In support of this Motion, in addition to his own declaration, Named Plaintiff submits three additional declarations from former employees of Defendant:

1. Keenan Senter, a Lease Operator for Defendant working out of its Canadian, Texas location—a sub-location of Defendant's Perryton, Texas location—from approximately May 2014 until August 2015. Exhibit B, Declaration of Keenan Senter ¶ 2.
2. Jammie Hobbs, a Lease Operator for Defendant who worked out of Hobbs, New Mexico from approximately August 2005 until August 2015 and a Production Foreman (supervising Lease Operators) in Hobbs, New Mexico from

[1] *See, e.g.*, *Olivas v. C & S Oilfield Services, LLC*, CV 17-0022 JB-CG, 2018 WL 1997305, at *1 (D.N.M. Apr. 27, 2018) (Browning, J.); *Landry v. Swire Oilfield Services, L.L.C.*, 252 F. Supp. 3d 1079 (D.N.M. 2017) (Browning, J.); *Foster v. Nova Hardbanding, LLC*, CV 15-1047 CG/LAM, 2016 WL 4492829 (D.N.M. Apr. 20, 2016).

      approximately August 2015 until September 2016. Exhibit C, Declaration of Jammie Hobbs ¶¶ 3, 5.

3. Ricky Apperson, a Hobbs, New Mexico Lease Operator for Defendant from approximately March 2007 until May 2012 and a Hobbs, New Mexico Production Foreman (supervising Lease Operators) from approximately May 2012 until September 2016. Exhibit D, Declaration of Ricky Apperson ¶ 3, 5.

As of September 2016, Defendant employed 72 Lease Operators out of its Hobbs, New Mexico location; 7-8 Lease Operators out of its Canadian, Texas location; and 30 or more Lease Operators out of its Perryton, Texas location. Ex. B ¶ 3; Ex C ¶ 4; Ex D ¶ 4. Defendant also has additional locations in Midland, Texas; Amarillo, Texas; Woodward, Oklahoma; and Oklahoma City, Oklahoma. *See,* Exhibit E, Mewbourne Website.

Named Plaintiff Felps, Senter, Hobbs, Apperson, and the Class Member Lease Operators had the same job duties as Lease Operators: they spent most of their working time performing manual tasks outside, including in the oilfields, such as (1) operating oilfield equipment; (2) inspecting and maintaining oilfield equipment; (3) monitoring oilfield equipment; and (4) collecting and relaying data—including the amounts of oil, gas, and water in storage tanks—to supervisors for analysis. Ex. A ¶ 4; Ex. B ¶ 4; Ex C ¶ 6; Ex D ¶ 6. The job functions of Plaintiffs required little to no official training, and it did not require a college education or other advanced degree. *Id.* Named Plaintiff Felps, Senter, Hobbs, Apperson, and the Class Member Lease Operators were also paid in the same manner—they were paid a base salary only and were not paid any additional compensation for their hours worked over forty in a week. Ex. A ¶ 5; Ex. B ¶ 5; Ex C ¶ 7; Ex D ¶ 7. Mewbourne misclassified Named Plaintiff and the Class Member Lease Operators as "exempt" from the FLSA. *See Id.*

**B. Defendant admitted to misclassifying Lease Operators during two US Department of Labor Investigations but did not obtain releases from all Lease Operators.**

While Named Plaintiff worked for Defendant, the company was being investigated by the United States Department of Labor ("US DOL") for misclassifying its Lease Operators (Pumpers) as exempt under the FLSA (the "First Investigation"). *See* Exhibit F, Certified Records from U.S. Department of Labor. The First Investigation began in August 2016 and was initially focused solely on Defendant's Hobbs, New Mexico location, which is where Named Plaintiff worked. Ex A ¶ 2, Ex. F pp. 13, 15. The First Investigation covered the period from October 29, 2014 until October 28, 2016. Ex. F p. 9. Counsel for Defendant, "upon receipt of the Department of Labor investigative notification of the establishment conducted a review of the pay practices and identified the establishment was not in compliance with the Act [the FLSA]." *Id.* p. 15.[2] The initial conference during the First Investigation occurred on October 28, 2016. *Id.* Defendant's counsel requested time to collect individual daily GPS records to calculate hours worked and make back wage computations. *Id.* After missing the deadline to provide the data, Defendant obtained an extension. *Id.* Defendant eventually provided only limited GPS data. *Id.* The US DOL continued to follow-up with Defendant's counsel with "negative results." *Id.* Eventually, the US DOL provided a tolling agreement to Defendant but again its counsel did not respond. *Id.* Finally, the US DOL phoned Defendant's General Counsel who refused to enter the tolling agreement. *Id.*

In the First Investigation, the US DOL determined that Defendant's Lease Operators (Pumpers) were misclassified as exempt and further determined that Defendant's FLSA violations were "systemic." *Id.* pp. 14, 16-17. Stymied by the Defendant's delays, and unable to make back

[2] Defendant's counsel in the instant litigation also represented Defendant during the U.S. Department of Labor investigations.

wage computations, the US DOL referred the case from the US DOL's Albuquerque District Office to its Dallas District Office. *Id.* pp. 16-17.

The US DOL then met with Defendant's counsel at Defendant's corporate offices in Tyler, Texas on March 7, 2017. *Id.* p. 17. During that meeting, Defendant's counsel again acknowledged Defendant was not in compliance with the FLSA and "requested time to compile information and complete the back-wage computations on all pumpers in Hobbs, New Mexico and other locations of Mewbourne Oil Company." *Id.* Defendant provided back wage computations nine months later on December 27, 2017, promising make payments to 26 Lease Operators (Pumpers) by January 31, 2018. *Id.*

Due to the non-compliance issues discovered at the Hobbs, New Mexico location, the Department of Labor began another investigation regarding "all other locations" of Defendant (the "Second Investigation"). *Id.* p. 7. The Second Investigation covered the time period February 27, 2015 through February 24, 2017. *Id.* p. 2. On January 3, 2018, during a conference in connection with that investigation, Defendant's counsel conceded that it had violated the FLSA with regard to other Lease Operators (Pumpers) at Defendant's other locations. *Id.* p. 6. As a result, the US DOL found that "[a]ll pumpers, working for Mewbourne Oil Company were classified as exempt" but "did not meet the exemption requirements of the Act [FLSA]." *Id.* p. 5. After conceding the violations, Defendant identified for the DOL only 27 additional Lease Operators company-wide and agreed to make payments to those 27 individuals by January 31, 2018. *Id.* pp. 3, 7.

Defendant now concedes that it reclassified its Lease Operators as non-exempt in October 2016 and "obtained USDOL-approved releases from approximately 53 Lease Operators." Dkt. 9 pp. 2-3. Although covered by both the First and Second Investigations, both Named Plaintiff Felps and Mr. Hobbs did not receive any funds as a result of the US DOL investigations and did not sign any release of claims. Ex. A ¶ 9; Ex. C ¶ 11. Further, Mr. Senter, a Lease Operator within the

scope of the Second Investigation, also received no funds from the US DOL and did not sign any release. Ex. B ¶ 9.

## III. REQUEST FOR CONDITIONAL CERTIFICATION AND NOTICE

Plaintiff requests that the Court conditionally certify a class defined as:

> **All persons who worked as a Lease Operators or Pumper for Defendant at any time between October 31, 2015 and November 1, 2016.**[3]

### A. Collective actions are favored, and the District Court is authorized to issue notice.

A FLSA plaintiff may bring an action on behalf of all "other similarly situated employees." 29 U.S.C. § 216(b). "Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Such collective actions are favored under the law because they enable the "efficient resolution in one proceeding of common issues of law and fact," and provide plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Id*. "The broad remedial goal of the statute should be enforced to the full extent of its terms." *Id.* at 173.

Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," the FLSA authorizes the Court to manage the collective action, including the power to authorize notice and monitor preparation and distribution of the notice. *Id.* at 169-73. "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting a cutoff date to expedite disposition of the action." *Id.* at 172. In short, the FLSA empowers and encourages this Court to issue notice to all potential plaintiffs, and it should do so in this case.

[3] Defendant now concedes that it reclassified its Lease Operators as non-exempt in October 2016 and "obtained USDOL-approved releases from approximately 53 Lease Operators." Dkt. 9 pp. 2-3. Based on this concession, Plaintiff limits the class to those individuals employed before November 1, 2016.

**B. The Tenth Circuit uses a two-stage approach to issuing notice to class members.**

Courts in this circuit use a two-step, or "*ad hoc*," approach to determine whether to certify an FLSA collective action. *See Thiessen v. General Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2002); *Aguilar v. Mgt. & Training Corp.*, CV 16-050 WJ/GJF, 2017 WL 4277139, at *3 (D.N.M. Jan. 27, 2017) (Fourrat, M.J.), *report and recommendation adopted*, CV 16-050 WJ/GJF, 2017 WL 4534874 (D.N.M. Feb. 15, 2017); *accord Foster v. Nova Hardbanding, LLC*, CV 15-1047 CG/LAM, 2016 WL 4492829, at *2 (D.N.M. Apr. 20, 2016) (Garza, M.J.). Magistrate Judge Fouratt described the "*ad hoc"* approach in *Aguilar*:

> Under this approach, a court makes an initial "notice stage" determination about whether a group of plaintiffs are similarly situated. That is, the court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. A court must certify a case conditionally as a collective action before plaintiffs may send notice to putative class members of their right to opt-in.
>
> For conditional certification at the notice stage, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. The plaintiff must establish a "reasonable basis" for his claim that there are other similarly situated employees.

*Aguilar*, 2017 WL 4277139 at *3 (quotations and citations omitted).

The *ad hoc* standard is a "lenient standard . . . which typically results in conditional certification of a representative class." *Id.* At the initial stage, Named Plaintiff "need only show that their positions are similar, not identical to the positions held by the putative class members." *Bustillos v. Bd. of County Com'rs of Hidalgo County*, 310 F.R.D. 631, 668 (D.N.M. 2015) (Browning, J.) (citation omitted). At this stage, "the Court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims." *Aguilar*, 2017 WL 4277139 at *3.

Courts use a relaxed evidentiary standard when deciding the issue of conditional certification. *See Swartz v. D-J Engr., Inc.*, 12-CV-1029-JAR, 2013 WL 5348585, at *4 (D. Kan. Sept. 24, 2013) ("Requiring a plaintiff to present evidence at this stage that meets the standards of

the Federal Rules of Evidence 'fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis of his case.'").

**C. Class Members are entitled to notice based on Plaintiff's allegations and sworn declarations submitted with this Motion.**

1. Conditional Class Certification is appropriate.

At the notice stage of the *ad hoc* framework, a plaintiff must provide, "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Aguilar*, 2017 WL 4277139 at *3. "Thus, for this Motion, the Court will determine whether class members are similarly situated by looking at whether (1) the proposed class includes employees with similar positions and (2) defendants had a single decision, policy, or plan to not pay class members overtime." *Foster*, 2016 WL 4492829, at *2.

In this case, Named Plaintiff's "substantial allegations" consist of his own declaration, plus the declaration of Keenan Senter, the declarations of two Lease Operators who became supervisors of Lease Operators (Jammie Hobbs and Ricky Apperson), and the Certified US DOL records relating to the First and Second Investigation into Defendant's misclassification of its Lease Operators. *See* Exs. A-E. The evidence discussed above in Part III uniformly shows that Defendant's Lease Operators had similar job duties and regularly worked more than forty hours per week but Defendant misclassified them as FLSA exempt and refused to pay them any overtime compensation. *See* Part III. Defendant—acting through the same counsel representing it in this litigation—admitted to the US DOL that it misclassified its Lease Operators across all locations. Ex. F pp. 6, 15, 17. And unsurprisingly in light of this admission, the US DOL found that Defendant misclassified its Lease Operators as FLSA exempt across all locations. *Id.* pp. 5, 14. Defendant now concedes that it reclassified its Lease Operators as non-exempt in October 2016. Dkt. 9 p. 22.

Therefore, Named Plaintiff has provided much more than "substantial allegations." He has put forward admissions by the Defendant—through both its former supervisors and its legal counsel before the US DOL—that it engaged in an unlawful practice of misclassifying its Lease Operators as exempt in violation of the FLSA. *See Foster*, 2016 WL 492829 *1 (granting conditional certification of class where the plaintiff's sole supporting evidence was his own declaration). Plaintiff has met his lenient burden for certification in this case.

2. That some Class Members signed form WH-58 releases does not prevent conditional class certification.

Named Plaintiff anticipates that Defendant will argue that conditional class certification is not appropriate because it already received US DOL approved releases (Forms WH-58) from some of the Class Members. Dkt. 9 pp. 2-3. Such an argument is unavailing for two reasons. First, with this Motion, Plaintiff submitted evidence that at least three Lease Operators—Named Plaintiff and Declarants Senter and Hobbs—covered by the First and Second US DOL Investigations neither received consideration in the form of money nor signed any releases with the US DOL. Importantly, Defendant has not alleged that it obtained releases from the *entire* class of Lease Operators. Indeed, Plaintiff presents evidence that between the Hobbs, New Mexico; Perryton, Texas; and Canadian, Texas locations alone, Defendant employed more than 100 Lease Operators at any given point in time. Ex. B ¶ XX, Ex. C ¶ XX, Ex. D ¶ XX. But Defendant asserts that it obtained releases from only 53 Lease Operators. Dkt. 9 p. 2-3.

Second, Defendant's counsel mentioned in the October 29, 2018 status conference that the release obtained is the US DOL's Form WH-58. The Form WH-58 informs individuals receiving funds of the workweeks for which the funds are intended to compensate them; it reads, "I, ______________________, have received payments of wages, employment benefits, or other compensation due to me from ______________for the period beginning with the workweek

ending _______________ through the workweek ending ______________."[4] Importantly, courts across the country are in agreement that a WH-58 waives only those FLSA claims that accrued during the workweeks listed on the form. *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1147 (9th Cir.2007) (holding that a plaintiff who signed a WH–58 Receipt waiving FLSA claims for the period of May 4, 2002 through October 11, 2003, waived only those claims accruing within that time period and could seek damages related to earlier violations under the three-year statute of limitations applicable to willful acts); *accord Jungkunz v. Schaeffer's Inv. Research, Inc.*, 1:11-CV-00691, 2014 WL 1302553, at *8 (S.D. Ohio Mar. 31, 2014) ("Those waivers may not prevent the affected employees from seeking damages for a third year of potential violations to the extent the employees could prove that [defendant] acted willfully and that such claims would not be barred by the statute of limitations, as discussed below.").[5]

Therefore, Plaintiff agrees that Class Members who signed Form WH-58s that explicitly list that the funds received covered the workweeks occurring between October 31, 2015 and the date Defendant reclassified its Lease Operators as non-exempt are properly excluded from the class. However, any Class Members who signed WH-58 forms that did not include all of those weeks have not waived *all* of their claims and are properly included in the class. *See Dent*, 502 F.3d at 1147. The effect of their release will impact only their recoverable damages; and differences in damages is not a valid reason to deny conditional certification. *See, e.g.*, *Maynor v. Dow Chem. Co.*, CIV. A. G-07-0504, 2008 WL 2220394, at *9 (S.D. Tex. May 28, 2008)

---

[4] An example US DOL WH-58 can be viewed at: https://www.pdffiller.com/jsfiller-desk7/?projectId=232691823&expId=4071&expBranch=1#eaf649d79b554c1c877c441e15889a77 (last viewed October 30, 2018).

[5] *See also Cappelli v. Miami Beach Hosp.*, LLC, 15-24218-CIV, 2017 WL 945187, at *3 (S.D. Fla. Jan. 10, 2017) ("The release does not cover this later timeframe, and we find that genuine issues of fact preclude entry of summary judgment for the entirety of Plaintiff's claim."); *Moultry v. Cemex, Inc.*, 8:07-CV-453-T-26MSS, 2008 WL 1743484, at *1 (M.D. Fla. Apr. 15, 2008) (relying on *Dent*, creating a subclass of class members that included those who signed WH-58s).

(collecting sources and stating, "[m]ost courts have held that in unpaid overtime 'off-the-clock' cases, the need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated.").

## IV. REQUEST FOR NOTICE TO CLASS MEMBERS

Plaintiffs' proposed Notice (*see* **Exhibit G**) to potential opt-ins is "timely, accurate, and informative," as the law requires. *Hoffmann-La Roche,* 493 U.S. at 172. It contains accurate notice of the pendency of this action and the ways in which potential plaintiffs may opt-in; and they are informed that they are not required to opt-in.

Plaintiffs request that Defendant be ordered to produce within ten (10) days of the granting of this Motion an Excel file containing the names, dates of employment, all known addresses, all known email addresses, and all known telephone numbers (home, mobile, etc.) of all the potential opt-in plaintiffs.

Plaintiff's counsel requests leave to send notice to all current and former employees of Defendant who worked as a Lease Operator for Defendants since October 31, 2015. Plaintiff requests a 60-day opt-in period from the date of initial mailing and emailing. *See Landry v. Swire Oilfield Services, L.L.C.*, 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017) (Browning, J.) (permitting 75 day notice period); *Saenz v. Rod's Prod. Services, LLC*, 2:14-CV-00525 RB-GBW, 2015 WL 12866985, at *2 (D.N.M. Mar. 6, 2015) (Brack, J) ("Given the circumstances in this case, the Court considers a 70-day opt-in period reasonable."). Plaintiff requests to send the Notice and Consent forms (**Exhibit G**) by mail and email and the proposed Text Message Notice of Collective Action (attached as **Exhibit H** to this motion) via text message to all identified class members. *See Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) (Johnson, C.J.) ("Further discussion regarding whether notice by email and text should be allowed would also be pointless because the law is on Plaintiff's side. Courts have recognized that notice by email and text is

reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved."); *Landry*, 252 F. Supp. 3d at 1130 (permitting notice via mail, e-mail, text message, and website electronic signature); *Williamson v. AmeriFlow Energy Services L.L.C.*, CV 15-878 MCA/GJF, 2016 WL 10179367, at *4 (D.N.M. May 17, 2016) (Fouratt, M.J.), *report and recommendation adopted*, CV 15-878 MCA/GJF, 2016 WL 10179250 (D.N.M. Sept. 15, 2016) ("[A]llowing service by both [mail and e-mail] simply recognizes the nomadic nature of the putative class members' work and the nature of modern communication generally. Furthermore, this dual notice is now common in the Tenth Circuit."); *Foster, LLC*, 2016 WL 4492829, at *6 (permitting notice by mail and e-mail).

Finally, Plaintiffs request leave for their counsel to be permitted to maintain an Adobe Sign website where the Notice and Consent Form (**Exhibit G**) will be posted and Class Members may view and, if they choose, electronically sign the Consent Form. *See Landry*, 252 F. Supp. 3d at 1095, 1130 (permitting identical use of a Right Signature (Adobe Sign competitor) website that posts a document and permits the viewer to electronically sign it); *Foster*, 2016 WL 4492829, at *7 (permitting electronic signature through Right Signature); *Williamson v. AmeriFlow Energy Services L.L.C.*, 2016 WL 10179367, at *4 (permitting electronic signatures through Right Signature).[6]

---

[6] *See also* 15 U.S.C. § 7001(a)(1) ("[W]ith respect to any transaction in or affecting interstate or foreign commerce," a "signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form."); SEE N.M. STAT. § 14-16-7 ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."); *Black v. Settlepou, P.C.*, 3:10-CV-1418-K, 2011 WL 609884, at *6 (N.D. Tex. Feb. 14, 2011) ("Ms. Black's counsel is authorized to maintain an internet website for the purpose of informing similarly situated persons of their right to opt into this litigation."); *Knox v. Jones Group*, 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016) (permitting the posting of notice on a public website because "[o]pening a public website improves access to consent forms" and noting that "[a]s with email, communication through websites is common."). *White v. Integrated Electronic Technologies, Inc.*, Civil Action Nos. 11–2186, 12–359, 2013 WL 2903070, *8 (W.D. La. June 13, 2013), *8 (permitting electronic signatures on consent forms from a dedicated website); *Beall v. Tyler Techs., Inc.*, Civil Action No. 2:08–CV–422, 2009 WL 1766141, *3-*4 (E.D. Tex.

## V. REQUEST FOR PROVISIONAL EQUITABLE TOLLING

An opt-in plaintiff's statute of limitation continues to run until he or she files a consent to join the lawsuit. 29 U.S.C. § 256; *see also Abrams v. City of Albuquerque*, 10-0872 MV/RHS, 2014 WL 11497810, at *3 (D.N.M. June 26, 2014) ("In order to be joined as a plaintiff in an FLSA case, an individual must file his or her consent to opt-in to a class action within the applicable statute of limitations. Thus, the filing of a complaint does not stop the statute of limitations from running in a collective action; rather, it is only the filing of a consent to opt-in that stops the limitations period from expiring." (internal citations omitted)). However, the FLSA's statute of limitation, like all such federal limitations periods, is subject to equitable tolling. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("This equitable doctrine is read into every federal statute of limitation."); *Abrams*, 2014 WL 11497810, at *3 ("The majority of courts have held that equitable tolling is an available remedy under the FLSA, provided that the circumstances warrant application of the doctrine."). "Equitable tolling permits courts to extend statutes of limitations on a case-by-case basis to prevent inequity." *Abrams*, 2014 WL 11497810, at *3. "The Tenth Circuit has held that equitable tolling of time limitations is appropriate where . . . 'a plaintiff . . . has in some extraordinary way been prevented from asserting his or her rights.' *Id.* (quoting *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984). "The decision to invoke equitable tolling in a particular case lies exclusively within the sound discretion of the trial court." *Abrams*, 2014 WL 11497810, at *3.

Although some courts outright reject litigation delays caused by the certification process as sufficient to justify equitable tolling, other "courts determine that notice may be sent to putative

---

June 23, 2009) (conditionally certifying a class, and ordering the parties to confer regarding, among other things, "the content and operation of a website, to be maintained by the plaintiffs' counsel" in a FLSA collective action); *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 582 (D. Minn. 2014) (approving of a third-party notice administrator to disseminate notice by, among other methods, "website design and maintenance").

class members as if the court had tolled the statute of limitations during its decision process but reserve ultimate ruling on the question for any individual plaintiff for a later date." *Id.*[7] The *Abrams* court adopted the latter approach and Named Plaintiff requests the Court adopt it here. *Id.*[8]

Plaintiff is filing this Motion without delay—just over two months after filing his Original Complaint. Dkt. 1. Although Defendant has already admitted to the US DOL that it misclassified its Lease Operators nationwide and admits that it made back-wage payments to at least some of its Lease Operators, Defendant opposes this Motion even though, as Defendant is well aware, it will be decided on a "lenient standard . . . which typically results in conditional certification of a representative class." *Aguilar*, 2017 WL 4277139 at *3. Further, Counsel for defendant has already requested—and the Court has granted—an extension to respond to this Motion. Dkts. 10, 11. Defendant's deadline to respond to this motion is now 41 days from today. *Id.* Consequently, Defendant's actions in this litigation are causing delay in delivering notice to putative class members.

And, if Defendant's assertion that it reclassified its Lease Operators in October of 2016 is correct, without tolling, the FLSA claims of the putative class members will expire in October 2019. Considering the forthcoming briefing on this Motion, the necessary time for the Court to consider and rule, and—if the Motion is granted—the time for the Class Members to receive notice and opt-into the suit, it is entirely possible that Defendant's decision to oppose conditional class

[7] Other courts are more open to equitable tolling, "conclud[ing] that equitable tolling during the certification process may apply to all putative class members." *Id.*; *see, e.g., Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012) (equitably tolling limitations period "to protect the Opt-in Plaintiffs' diminishing claims," stating that the unique circumstances of a collective action "[are] not only significant but justif[y] tolling the limitations period . . . until the court authorizes the provision of notice to putative class members or issues an order denying the provision of notice." (quoting *In re Bank of America Wage and Hour Emp't Litig.*, No. 10–MDL–2138, 2010 WL 4180530 (D. Kan. Oct. 20, 2010)).

[8] In *Abrams*, the plaintiffs file two motions for conditional class certification under the FLSA. *Id.* at *8. But it was not until the second motion that the plaintiffs requested equitable tolling. *Id.* Therefore, the court granted tolling only dating back to the more recently filed second motion for conditional certification. *Id.*

certification might, without an order tolling their limitations period, wipe out the claims of the Class Members altogether. *Cf. Abrams*, 2014 WL 114397810 at *8 ("Defendant surely anticipated that, if the certification process extended beyond July 2013, it would argue that the putative claims for willful violations were time barred."); *Kenney v. Helix TCS, Inc.*, 17-CV-01755-CMA-KMT, 2018 WL 722458, at *3 (D. Colo. Feb. 5, 2018) ("Plaintiff argues in this case that the statute of limitations should be equitably tolled in order to 'protect the interests of absent potential class members who have been, and continue to be, affected by' Defendant's 'unreasonabl[e]' 'delay tactics.' The Court agrees." (internal citation omitted)).

Therefore, Plaintiff requests the Court provisionally toll the limitations period for any opt-in class member from the date of this Motion—October 31, 2018— until the Court rules on this Motion. By provisionally tolling limitations, Class Members employed by Defendant dating back to October 21, 2015 would receive notice of their claims. The provisional tolling would not determine with finality whether equitable tolling is appropriate. Rather, a filing ruling on equitable tolling will be postponed until a future date and will be based on the individual circumstances of the opt-in plaintiff(s).

## VI. Conclusion and Prayer

For the foregoing reasons, Named Plaintiff respectfully requests that the Court conditionally certify the class, authorize counsel for the Plaintiffs to send the Notice and Consent forms submitted with this motion as Exhibit G and the Text Message Notice of Collective Action submitted with this motion as Exhibit H to the following group of individuals:

> **All persons who worked as a Lease Operators or Pumper for Defendant at any time between October 31, 2015 and November 1, 2016.**

Plaintiffs additionally respectfully request that the Court award the relief outlined in the proposed Order submitted with this Motion.

Respectfully Submitted,

**MORELAND VERRETT, P.C.**
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Tel: (512) 782-0567
Fax: (512) 782-0605

By: */s/ Daniel A. Verrett*
    Daniel A. Verrett
    Texas State Bar No. 24075220
    daniel@morelandlaw.com

Edmond S. Moreland, Jr.
Texas Bar No. 24002644
edmond@morelandlaw.com
700 West Summit Drive
Wimberley, Texas 78676
(512) 782-0567
(512) 782-0605 – telecopier

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify that conferred with counsel for Defendant regarding the relief requested in this Motion.  Defendant is opposed to this Motion.

/s/ *Daniel A. Verrett*
Daniel A. Verrett

## CERTIFICATE OF SERVICE

I certify that I filed this document using the Court's CM-ECF electronic filing service on October 31, 2018, which will notice all parties to this case.

/s/ *Daniel A. Verrett*
Daniel A. Verrett