# EXHIBIT A

## DECLARATION OF JONATHAN FELPS

1. My name is Jonathan Felps.  I am over the age of 18 and am competent to testify to the facts contained in this declaration.  I have personal knowledge of all of the facts contained in this declaration, and they are all true and correct.

2. I am a former employee of Mewbourne Oil Company ("Mewbourne").  I worked for Mewbourne from approximately 2014 until October 2016. I worked for Mewbourne in New Mexico and was based out of Mewbourne's Hobb's, New Mexico location.

3. Mewbourne employed me as a Lease Operator (also known as a Pumper) throughout my employment with Mewbourne.  During my employment with Mewbourne, it employed many other Lease Operators, some of them based out of New Mexico, including Dean Heady, Caleb Ragsdale, Ryan Skinner, Jose (Last Name Unknown) and many others I cannot remember right now.   During my employment, Mewbourne had 40-60 Lease Operators at any given time in just its Hobbs, New Mexico location.  With turnover, I estimate the Mewbourne employed 100 or more Lease Operators out of its Hobbs, New Mexico location during my employment.

4. In speaking with and getting to know the other Lease Operators at Mewbourne, I learned that we have the same job duties.  I also worked alongside the other Lease Operators and was able to observe them at work.  Based on my conversations and observations, I know that I and the other Lease Operators performed the same or similar work for Mewbourne.  I and the other Lease Operators spent most of our working time performing manual tasks outside, including in the oilfields, such as (1) operating oilfield equipment; (2) inspecting and maintaining oilfield equipment; (3) monitoring oilfield equipment; and (4) collecting and relaying data—including the amounts of oil, gas, and water in storage tanks—to supervisors for analysis.  The job functions of

Plaintiffs required little to no official training, and it did not require a college education or other advanced degree.

5. For the entire time I have was employed by Mewbourne, I was classified by Mewbourne as "exempt" from any laws requiring the payment of overtime. I was compensated with a base salary only. If I worked more than forty hours in a week, I was not paid any additional compensation and was never paid any overtime compensation. Mewbourne's other Lease Operators were also classified as "exempt" and paid the same way. I know this based on my conversations with other Lease Operators, including but not necessarily limited to those listed in paragraph 3, above.

6. While I worked as a Lease Operator for Mewbourne, I worked very long hours. I almost always worked more than forty hours per week and frequently worked more than 60 hours in a week. Mewbourne other Lease Operators also worked long hours and frequently work more than forty hours per week. I and the other Lease Operators were typically assigned to work, and do work, at least ten (10) hours per day on hitches that were either seven (7) days on and two (2) days off or eight (8) days on and four (4) days off. But neither I nor Mewbourne's other Lease Operators were paid for many of these hours because we were paid a salary only and were not paid any additional compensation, including overtime compensation.

7. Mewbourne did not maintain any time records for the Lease Operators. However, Mewbourne knew that its Lease Operators were working significant amounts of overtime. I know this Mewbourne had GPS tracking enabled on our company vehicles and therefore knew the amount of time we were working.

8. The Lease Operators, including me, drove company vehicles in the performance of our job duties. These company vehicles had Gross Commercial Weight Ratings of less than 10,000 pounds.

9. I am aware that Mewbourne was under investigation by the Department of Labor for misclassifying its Lease Operators, including those in Hobbs, New Mexico. I have not receivedany money from the United States Department of Labor and have not signed any forms releasing any claims against Mewbourne.

10. In getting to know other Lease Operators at Mewbourne, I believe there are many current and former Lease Operators, including the ones I named in paragraph 3, who would join a collective action to try to recover their unpaid off-the-clock overtime compensation from Mewbourne if they were informed of their rights to do so and especially if they were informed of their right to do so without the fear of retaliation for asserting their rights to recover their unpaid overtime.

11. Most, if not all, of the employees of Mewbourne have smart phone cell phones with the ability to receive text messages and view websites. Sending notice of the collective action via cell phone and e-mail will be a very effective way to advise potential class members of this lawsuit and their ability to join.

I declare under penalty of perjury that the foregoing statements are true and correct.

Date: Oct 25, 2018

_____
Jonathan Felps (Oct 25, 2018)
Jonathan Felps