**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
LAS CRUCES DIVISION**

| | | |
|---|---|---|
| **JONATHAN FELPS, Individually and On Behalf of All Others Similarly Situated,** | § § § | |
| | § | **Civil Action No.** |
| **Plaintiffs,** | § § | |
| | § | **2:18-CV-811 RB-GJF** |
| **v.** | § § | |
| **MEWBOURNE OIL COMPANY, INC. and D. DREW GREENE,** | § § § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION FOR LIABILITY ONLY
UNDER RULE 23(B)(3)**

---

Plaintiff Jonathan Felps ("Plaintiff") on behalf of himself and all others similarly situated ("Class Members" herein) files this Motion for Class Certification under Rule 23(b)(3).

## I.  INTRODUCTION

Named Plaintiff and Class Members worked as Lease Operators for Mewbourne Oil Company in New Mexico, had the same job duties, were paid a salary, and were not paid any additional compensation for their extensive overtime hours.  They were each misclassified as exempt from the overtime protections of both the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NM Wage Act").  This is not a case where putative class members are strewn across the country, have varying theories of relief, rely on disparate laws, or are subject to differing affirmative defenses.  Rather, this is a case in which Defendant Mewbourne (1) admits it misclassified all class members as overtime exempt, (2) paid the class members a salary with no overtime, (3) has not asserted any specific exemption defense to liability, and (4) has even admitted

to misclassifying putative class members as overtime exempt under the FLSA to the U.S. Department of Labor.  In addition to their FLSA claims, Plaintiff and Class Members each bring unpaid overtime claims under the NM Wage Act. In short, this case is appropriate for Rule 23 class certification.

Plaintiff requests that the court certify this action as a class action under Federal Rule 23(b)(3) as to his second cause of action—failure to pay overtime under the NM Wage Act. Plaintiff requests that, pursuant to Federal Rule 23(c)(4), the class be certified for liability purposes only and that damages be proved individually by the class members. Plaintiff requests to be appointed class representative and that his counsel be appointed class counsel.

## II.      Legal Basis of Claims

The NM Wage Act entitles all employees to overtime compensation calculated at 150% their regular hourly rate for all hours that they work over 40 in a workweek. N.M. Stat. Ann. § 50-4-22(D). "The MWA defines 'employee' as 'an individual employed by an employer.'" *Rivera v. McCoy Corp.*, 240 F. Supp. 3d 1150, 1155 (D.N.M. 2017) (citing N.M. Stat. Ann. § 50–4–21(C) (2008).  To prove their claim, employees must show that show that (a) they worked more than forty hours a week, (b) that Mewbourne knew or should have known that they did so, and (c) that they were not compensated for overtime. *Self v. United Parcel Service, Inc.,* 126 N.M. 396, 970 P.2d 582, 589 (1998).  The statute of limitations for NM Wage Act violations is three years.  N.M. Stat. Ann. § 37-1-5.  But, effective June 19, 2009, NM Wage Act claims "may encompass all violations that occurred as part of a continuing course of conduct regardless of the date on which they occurred." *Id.* § 50-4-32.   Mewbourne's practice of misclassifying Lease Operators as overtime exempt and not paying them for overtimes—dating to before June 19, 2009—violates the NM Wage Act and constitutes a "continuing course of conduct."

Therefore, Plaintiff requests that the Court certify a class defined as:

> **All of Defendants' current and former Lease Operators who, in at least one workweek between June 19, 2009 and June 21, 2017, were paid a salary with no overtime and who worked for Defendants in New Mexico.**

### III.   FACTUAL BACKGROUND

### A. Plaintiff presents extensive evidence of Defendants' uniform practice and policy of misclassifying Lease Operators under the NM Wage Act.

In support of this Motion, Plaintiff submits declarations from fourteen former New Mexico-based Lease Operators of Defendant, which collectively cover a fourteen (14) year period from 2003 until approximately August 2017:

1. Plaintiff Jonathan Felps, a Lease Operator from approximately February 2015 until October 2016. Dkt 12-1 ¶ 2; Dkt. 36 at ¶ 17, Dkt. 42 at ¶ 17, Dkt. 43 at ¶ 17.

2. Jammie Hobbs, a Lease Operator from approximately August 2005 until August 2015 and a Production Foreman (supervising Lease Operators) from approximately August 2015 until September 2016. Dkt. 12-3 ¶¶ 3, 5; Dkt. 36 at ¶ 47, Dkt. 42 at ¶ 47, Dkt. 43 at ¶ 47.

3. Ricky Apperson, a Lease Operator from approximately March 2007 until May 2012 and a Production Foreman (supervising Lease Operators) from approximately May 2012 until September 2016. Dkt. 12-4 ¶¶ 3, 5; Dkt. 36 at ¶ 49, Dkt. 42 at ¶ 49, Dkt. 43 at ¶ 49.

4. Tyson Fletcher, a Lease Operator from approximately May 2011 until October 2013. Exhibit A ¶¶ 3, 5; Dkt. 36 at ¶ 53, Dkt. 42 at ¶ 53, Dkt. 43 at ¶ 53.

5. Ross Menefee, a Lease Operator from approximately July 2010 until December 2011. Exhibit B ¶ 3; Dkt. 36 at ¶ 53, Dkt. 42 at ¶ 53, Dkt. 43 at ¶ 53.

6. Doug Thompson, a Lease Operator from approximately September 2009 until October 2012. Exhibit C ¶ 3; Dkt. 36 at ¶ 51, Dkt. 42 at ¶ 51, Dkt. 43 at ¶ 51.

7. Danny Stark, a Lease Operator from approximately July 2014 until February 2016. Exhibit D ¶¶ 2, 7.

8. Michael Morris, a Lease Operator from approximately 2003 until February 2011. Exhibit E ¶ 3.

9. Justin Levario, a Lease Operator from approximately 2009 or 2010 until the late fall of 2017. Exhibit F ¶ 3.

10. Nathaniel Echavarria, a Lease Operator from approximately July 2015 until August 2017. Dkt. 44-1 ¶¶ 3-4, 8.

11. Jeffrey Fraley, a Lease Operator from approximately March 2013 until March 2014. Exhibit G ¶¶ 2, 7.

12. Joseph Rodriguez, a Lease Operator from approximately October 2016 until March 18, 2017. Dkt. 44-2 ¶¶ 3, 8.

13. Brandon Brown, a Lease Operator from approximately March 2014 until March 2015. Exhibit H ¶¶ 2, 6.

14. Joseph Sullivan, a Lease Operator from approximately March 2013 until July 2015. Exhibit I ¶ 2.

Plaintiff also relies on:

1. Defendants' admissions in their respective Original Answers to Plaintiff's First Amended Complaint (Dkts. 42, 43);

2. Defendant Mewbourne's Responses to Plaintiff's First Requests for Admissions (Exhibit J)

3. Defendant Greene's Responses to Plaintiff's First Requests for Admissions (Exhibit K)

4. Defendant Mewbourne's Responses to Plaintiff's First Set of Interrogatories (Dkt. 24-1); and

5. Defendant Mewbourne's Amended Objections and Answer Plaintiff's Interrogatory No. 4 (Exhibit L).

6. Mewbourne's Job Description for its New Mexico-based Lease Operators (Exhibit M)

7. Plaintiff's eVIN records (Exhibit N)[1]; and

8. Certified Records from the U.S. Department of Labor (Dkt. 12-6).

**B. Defendant misclassified its Lease Operators as "exempt" from overtime under the NM Wage Act.**

Defendant Mewbourne is an oil and gas production company, managing all phases of oilfield operations from "prospect to pipeline." Dkt. 36 ¶ 16; Dkt. 42 ¶ 16; Dkt. 43 ¶ 16. Defendant does business in New Mexico in the Permian Basin. *Id.* Defendant Mewbourne admits that it has employed "thousands" of Lease Operators in New Mexico since August 2015 alone. Dkt. 24-1 at p. 3, 22 (Mewbourne's' Response to Interrogatory No. 16).[2] Defendant Mewbourne admits it employed Plaintiff Felps from approximately February 2015 until approximately October 2016. Dkt. 42 ¶ 17. Defendant Greene admits he was an "employer" as defined by the NM Wage Act and that Plaintiff Felps was his "employee." Exhibit K pp. 2-3 (Greene's Response to Request for Admission Nos. 1 and 3).

---

1 Defendant Mewbourne marked Exhibit N "Confidential" under the Court's Stipulated Confidentiality Order. Therefore, Plaintiff is separately filing a motion to file Exhibit N under seal.
2 In later communications with the undersigned, Mewbourne dialed back that estimate to "hundreds" but it has not amended its response to Interrogatory No. 16.

Named Plaintiff Felps, each of the declarant Lease Operators, and all the Class Member Lease Operators had the same job duties: they spent most of their working time performing manual tasks outside, including in the oilfields, such as (1) operating oilfield equipment; (2) inspecting and maintaining oilfield equipment; (3) monitoring oilfield equipment; and (4) collecting and relaying data—including the amounts of oil, gas, and water in storage tanks—to supervisors for analysis. Dkt 12-1 ¶ 4; Dkt 12-3 ¶ 6; Dkt. 12-4 ¶ 6; Ex. A ¶ 4; Ex. B ¶ 5; Ex C ¶ 5; Ex D ¶ 5; Ex E ¶ 6; Ex F ¶ 6; Dkt. 44-1 ¶ 6; Ex G ¶ 5; Dkt. 44-2 ¶ 6; Ex H ¶ 4; Ex I ¶ 5.  The job functions of Plaintiffs required little to no official training, and it did not require a college education or other advanced degree. *Id.*  Mewbourne has produced a single job description that covers all New Mexico Lease Operators.  Exhibit M.

Named Plaintiff Felps, each of the declarant Lease Operators, and all the Class Member Lease Operators were also paid in the same manner—they were paid a base salary only and were not paid any additional compensation for their hours worked over forty in a week.  Dkt 12-1 ¶ 5; Dkt 12-3 ¶ 7; Dkt. 12-4 ¶ 7; Ex. A ¶ 5; Ex. B ¶ 6; Ex C ¶ 6; Ex D ¶ 6; Ex E ¶ 7; Ex F ¶ 4; Dkt. 44-1 ¶ 7; Ex G ¶ 6; Dkt. 44-2 ¶ 7; Ex H ¶ 5; Ex I ¶ 6; Exhibit L at p. 2; Exhibit J pp. 2-3 (Mewbourne's Response to Request for Admission Nos. 4, 5, 8); Dkt. 42 ¶ 31; Dkt. 43 ¶ 31.  Mewbourne misclassified Named Plaintiff and the Class Member Lease Operators as "exempt" from the NM Wage Act.  *Id.*  Therefore, even though Named Plaintiff Felps, each of the declarant Lease Operators, and all the Class Member Lease Operators always worked more than forty hours per week, they were not paid any overtime compensation for their work. Dkt 12-1 ¶ 6; Dkt 12-3 ¶ 8; Dkt. 12-4 ¶ 8; Ex. A ¶¶ 5-6; Ex. B ¶ 7; Ex C ¶ 7; Ex D ¶ 7; Ex E ¶ 8; Ex F ¶ 9; Dkt. 44-1 ¶ 8; Ex G ¶ 7; Dkt. 44-2 ¶ 8; Ex H ¶ 6; Ex I ¶ 7.

### C. Mewbourne knew or should have known its Lease Operators were working in excess of forty hours per week.

Mewbourne knew its Lease Operators were working more than forty hours per week.  Dkt. 12-3 ¶ 9; Dkt. 12-4 ¶ 9; Ex A ¶ 7; Ex. C ¶ 8; Ex. D ¶ 8; Ex. F ¶ 10; Ex. G ¶ 8; Ex. I ¶ 8. Production Foremen—the Lease Operators' supervisors—knew the number of hours being worked by their subordinate Lease Operators and they knew the Lease Operators were working more than forty hours per week.  Dkt. 12-3 ¶¶ 5, 9; Dkt. 12-4 ¶¶ 5, 9.  Mewbourne also had GPS tracking enabled on company vehicles assigned to the Lease Operators and also knew from that data the amount of time Lease Operators were working.  *Id.*; Dkt. 24-1 p. 25 (Mewbourne's' Response to Interrogatory No. 19).  Mewbourne also scheduled Lease Operators' work hours. Ex. A ¶ 7. Further, Lease Operators regularly communicated with and complained to Mewbourne management about the long hours required by the position. Ex. C ¶ 10; Ex. D ¶ 8; Ex. F ¶ 10; Dkt. 44-2 ¶ 8; Ex. G ¶ 8; Ex. I ¶ 8. Finally, Lease Operators tracked their job tasks at the end of each workday in a company-provided program called eVIN, to which Mewbourne had access. Ex. D ¶ 8; Ex. F ¶ 10; Dkt. 44-1 ¶ 8; Dkt. 44-2 ¶ 8; Ex. G ¶ 8; Ex. I ¶ 8.  Many class members submitted those eVIN entries in Mewbourne's New Mexico offices. Ex. D ¶ 8; Dkt. 44-2 ¶ 8; Ex. G ¶ 8; Ex. I ¶ 8.  Mewbourne logged the time and date and the eVIN entries were submitted each day.  Ex. F ¶ 10.  Attached to this motion are the eVIN timestamps produced by Mewbourne regarding Plaintiff.  *See* Exhibit N.

### D. The misclassification of Lease Operators continued from 2003 until 2017 and constitutes a "continuing course of conduct."

This misclassification of Lease Operators in New Mexico dates back as far as at least 2003 and continued through October 2016, when Mewbourne "[re]classified" its lease operators as non-exempt. Dkt. 9-2; Ex. E ¶¶ 2, 7, 8; Dkt. 42 ¶ 31; Dkt. 43 ¶ 31. Despite reclassifying Lease Operators as exempt in October 2016, the NM Wage Act violations continued unabated until at least April or May 2017 because Mewbourne delayed in "implement[ing] this [re]classification."  Dkt. 47 pp.

2-3. In fact, Mewbourne waited until April or May 2017 to both (1) record the hours worked by its Lease Operators and (2) pay its Lease Operators overtime compensation for hours worked over forty. *See* Dkt. 44 pp. 2-3; Dkt. 44-1 ¶ 10.  Even after that date, Lease Operators reported working more than forty hours per week but Mewbourne did not pay any overtime for these overtime hours. Dkt. 44-1 ¶¶ 11, 13. It was not until June 2017 that Mewbourne foremen offered its Lease Operators the help they needed to complete their tasks within a forty-hour workweek. *Id.* ¶ 12.

Relevant to this discussion, Plaintiff previously filed a FLSA Section 216(b) motion for conditional certification defining the end date of the class definition as November 1, 2016.  Dkt. 12.  Upon learning the facts recited in the preceding paragraph, Plaintiff amended his FLSA 216(b) motion for conditional certification to extend the end date of the class definition to June 21, 2017. Dkt. 44.  While they have opposed Plaintiff's motion for conditional certification, Defendants do not oppose this extended end date.  Dkt. 47.[3]  Plaintiff requests the same June 21, 2017 end date for purposes of defining the class he seeks with this motion.

## IV.  LEGAL AUTHORITIES AND ARGUMENT

### A.  The Rule 23 standard.

"Rule 23 was intended to promote the efficient resolution of claims in cases involving multiple parties with similar claims, to eliminate repetitious litigation, and to avoid inconsistent judgments. To that end, the Rule elaborates comprehensive procedures to be followed in class actions." *Gottlieb v. Wiles*, 11 F.3d 1004, 1007 (10th Cir. 1993), *abrogated on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). To certify a class under the Federal Rules of Civil Procedure, the Plaintiffs must satisfy each of rule 23(a)'s prerequisites, and one of the three sets of Rule 23(b)'s requirements.  Rule 23(a) requires that a plaintiff show:

---

3 Defendants did oppose Plaintiff's request to conditionally certify the class and to equitably toll the statute of limitations.  Dkt. 47.

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  Rule 23(b), the subpart defining the kind of class that Plaintiff pursues with this motion, requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"  FED. R. CIV. P. 23(b). The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*  A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, (1982). While the plaintiff's likelihood of ultimate success of his or her claims on the merits is not one of the elements of the "rigorous analysis," "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

A federal district court has broad discretion in determining whether to certify a class under Rule 23. *Casias v. Distrib. Mgt. Corp., Inc.*, CV 11-00874 MV/RHS, 2014 WL 12710236, at *3

(D.N.M. Mar. 31, 2014) (citing *Rector v. City & County of Denver,* 348 F.3d 935, 949 (10th Cir. 2003)). When a question exists as "to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class." *Univ. of Utah v. United States,* No. 2:06-CV-595, 2008 WL 4534179, at *2 (D. Utah Oct. 6, 2008); *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968) ("[T]he interests of justice require that in a doubtful case, . . . . any error, if there is to be one, should be committed in favor of allowing the class action.").   "Courts routinely certify misclassification cases with similar common questions because the central question of whether the employees were wrongfully classified as exempt from overtime pay requirements is common to the class." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184 (S.D. Ohio 2012).[4]

**B. Rule 23 permits certification on the issue of liability only, with separate individual determinations as to damages.**

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  The advisory committee notes contemplate that, under Rule 23(c)(4), courts may certify a class solely for class adjudication of liability issues: "the action may retain its 'class' character only through the adjudication of liability to the class; the

---

[4] *See, e.g., Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir.2012) (affirming certification of assistant branch managers); *Lyons v. Citizens Fin. Group, Inc.*, 2012 WL 4044870 (D. Mass. July 9, 2012) (same); *Cuevas v. Citizens Fin. Group, Inc.*, 283 F.R.D. 95 (E.D.N.Y.2012) (same); *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337 (D.Md.2012) (certifying class of security investigators); *Sibert v. TV Magic, Inc.*, 2012 WL 3589795 (C.D. Cal. Aug. 21, 2012) (common questions of law and fact as to whether plaintiffs were employees or independent contractors); *Thomas v. Matrix Corp. Servs., Inc.*, 2012 WL 3581298 (N.D. Ill. Aug. 17, 2012) (same); *Scovil v. FedEx Ground Package Sys., Inc.*, 2012 WL 3308831 (D. Me. Aug. 13, 2012) (same); *Youngblood v. Family Dollar Stores, Inc.*, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) (certifying class of store managers); *Aponte v. Comprehensive Health Mgmt., Inc.*, 2011 WL 2207586 (S.D.N.Y. June 2, 2011); *Perkins v. Southern New England Tel. Co.*, 669 F.Supp.2d 212, 225 (D. Conn. 2009) ("despite some dissimilarities, the potential class members performed similar nonexempt duties, and exercised similar amounts of discretion in their day-to-day work, and thus, faced a common policy of misclassification"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008); *Alba v. Papa John's USA, Inc.*, 2007 WL 953849, at *6 (C.D. Cal. Feb. 7, 2007) (finding commonality in case involving misclassification of store managers); *Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007) (finding commonality in case involving misclassification of store managers); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203–04 (S.D.N.Y. 2006) (common questions of law and fact as to whether plaintiffs were employees or independent contractors); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607–08 (C.D.Cal.2005); Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 267 (D. Conn. 2002) (finding commonality because the class performed the same duties and was denied overtime pay).

members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."  Advisory Committee Notes for Subdivision (c)(4) of Rule 23.  Courts have routinely relied upon Rule 23(c)(4) to certify liability-only classes, leaving damages determinations for individual inquiries.  *See, e.g. Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013) ("A class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings.") (*quoting* Justice Ginsburg and Breyer's dissenting opinion in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1437 (2013)); *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 667 (D. Kan. 2013) ( "Certifying a class to determine defendant's liability, while leaving the class members to pursue their individual damages claims, is a common example of partial certification."); *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013) (affirming class certification on the issue of liability only under Rule 23(c)(4)); *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."); *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) ("As set forth more fully below, we conclude that the District Court erred by failing to certify a class on the issue of liability.").[5]  When considering whether to certify a liability-only class, the Rule 23 inquiry is limited to the "substantive elements

---

[5] *See also Jacob v. Duane Read, Inc.*, 293 F.R.D. 578, 592-94 (S.D.N.Y. 2013), aff'd, 602 Fed. Appx. 3 (2d Cir. 2015) (unpublished) (certifying unpaid overtime class on the issue of liability only with individual proceedings to determine damages); *Ruiz v. Affinity Logistics Corp.*, 05CV2125JLS (CAB), 2009 WL 648973, at *3 (S.D. Cal. Jan. 29, 2009) ("Certifying a class to determine the defendant's liability, while leaving the class members to pursue their individual damages claims, is a common example of partial certification [under Rule 23(c)(4)]."); *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 618 (D. Kan. 2014) (same).  By contrast, the Fifth Circuit appears to alone hold the opposite view, requiring a "strict application" of 23(b)(3) and finding that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) . . . ." *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 n. 21 (5th Cir.1996).

of the claim" and "does not include questions of remedy, e.g. damages . . . ."  *In re Motor Fuel*, 292 F.R.D. at 666.

### C.  Certifying a liability-only class materially advances the litigation.

"Courts should use Rule 23(c)(4) . . . only where resolution of the particular common issues would materially advance the disposition of the litigation as a whole."  *Id.*  In *In re Motor Fuel*, the issue before the court was whether to certify a liability only class.  There, the court granted the motion for liability only class certification and described the benefit of certifying a liability only class:

> If the Court certifies Rule 23(c)(4) classes as to Chevron's liability and Chevron prevails, the class actions will end. If plaintiffs prevail, the Court can determine whether injunctive relief is appropriate. By quantum leaps, this approach will advance the resolution of plaintiffs' core claims on a class-wide basis.

*Id.* at 667.  The same applies here.  Should the Court certify a class "as to [Defendants'] liability and [Defendants] prevail, the class actions will end. If plaintiffs prevail, the Court can determine whether [damages are] appropriate."  *Id.*  The district court in *Jacob* made a similar determination in an overtime misclassification case like this one:

> [C]ertification of the class for liability purposes will clearly advance the litigation in a meaningful way. Unlike a case in which a class proves, for example, that 'defendants collectively breached a duty, [but] must still establish that this breach caused each plaintiff's injury,' [Defendant's] misclassification, if proved, will have necessarily caused a uniform type of injury to class members: namely, the lack of overtime to which all class members would be entitled. The only remaining question then will be how much each individual is owed—an inquiry that may require varying levels of individualized proof for the reasons discussed above.

*Jacob*, 293 F.R.D. at 593 (internal citation omitted).   As the courts described in *In re Motor Fuel* and *Jacob*, a liability only class is appropriate in this case because it would materially advance the litigation of this case "by quantum leaps."  *In re Motor Fuel*, 292 F.R.D. at 667.

**D.  Plaintiff meets the Rule 23(a) standards.**

**1.  Plaintiff Meets the Numerosity Requirement of Rule 23(a)(1).**

Class certification is not appropriate unless the class is so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). In determining whether a proposed class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1221 (D.N.M. 2012) (*quoting Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002).

"Impracticable does not mean impossible." *Thornburg* at 1222 (quoting *Robidoux v. Celani*, 987 F. 2d 931, 935 (2d Cir. 1993). The Tenth Circuit rejects a "set formula to determine if the class is so numerous that it should be so certified.". *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (*citing and quoting Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 436 (10th Cir.1978) (internal quotations omitted). However, the "difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." *Thornburg* at 1221-22 (quoting *Robidoux*, 987 F. 2d at 936); *In re Farmers Ins. Co., Inc., FCRA Litig.*, No. CIV-03-158-F, 2006 WL 1042450, at *3 (W.D. Okla. Apr. 13, 2006) ("Although there is no magic number of members which would require class certification, classes of more than forty members have been deemed to satisfy the numerosity requirement.") (*citing Horn v. Associated Wholesale Grocers, Inc*., 555 F.2d 270, 275 (10th Cir.1977) (class of forty-six plaintiffs sufficient to warrant class certification)); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 436 (D.N.M. 2015), adhered to on reconsideration, 312 F.R.D. 620 (D.N.M. 2015) ("Although it is said that there is 'no set formula,' nor 'strict numerical test' for determining when a class is sufficiently numerous for joinder to be impracticable, the reality is that a per se numerosity threshold seems to exist somewhere south of 150 proposed class members." (internal citations omitted)). "Satisfaction of

the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." *Thornburg* at 1222 (*quoting Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 384 (D. Colo. 1993).

In addition, and importantly, "[i]n employment class actions like this one, a class member's potential fear of retaliation is an important consideration in deciding whether joinder is impracticable and thus whether the numerosity requirement is satisfied." *Swigart*, 288 F.R.D. 177 at 183 (S.D. Ohio 2012); *Simmons v. City of Kansas City, Kan.*, 129 F.R.D. 178, 180 (D. Kan. 1989) ("[A]lleged fear of retaliation against individual potential members of a class is a proper consideration when determining whether the numerosity requirement is met."); *Damassia,* 250 F.R.D. at 163 ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation."); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."); *Sanft v. Winnebago Indus., Inc.,* 214 F.R.D. 514, 524 (N.D. Iowa 2003) (compiling cases holding Rule 23's numerosity requirement satisfied because, where some class members are still employed by the defendant, "concern regarding employer retaliation or reprisal renders individual joinder less practicable").

Plaintiff has satisfied the numerosity requirement here because (1) Mewbourne's verified interrogatories state that it employed "thousands" of Lease Operators in New Mexico since August 2015 alone;[6] and (2) the alleged fear of retaliation in the context of this action supports a more

---

[6] Further, the class member declarants each testify to the number of Lease Operators *currently* employed by Mewbourne at the time of their respective terminations of employment. Those numbers range as high as 100 currently employed Lease Operators. Ex. F ¶ 6; Dkt. 44-2 ¶ 5. Because the Court may make "common sense assumptions," with employee turnover, it is reasonable to assume that Mewbourne employed hundreds of Lease Operators in New

relaxed numerosity requirement. *Fenley v. Wood Grp. Mustang, Inc.*, No. 2:15-CV-326, 2018 WL 1556177, at *13 (S.D. Ohio Mar. 30, 2018) (finding class of 27 fulfilled numerosity requirements despite falling "below the 40-member rule of thumb" because "courts are particularly conservative with the numerosity requirements in certifying employment cases where there is a prevalent fear of employer retaliation.") (collecting cases).

### 2.   Plaintiff Meets the Commonality Requirement of Rule 23(a)(2).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  "Commonality requires only a single issue common to the class, and the fact that 'the claims of individual putative class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy.'" *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289 (D.N.M. 2002) (Vázquez, J.) (citations omitted).  "Even factual differences in the claims of the individual putative class members should not result in a denial of class certification where common questions of law exist." *Payne v. Tri-State CareFlight*, LLC, 328 F.R.D. 601, 622 (D.N.M. 2018) (Browning, J.) (citations omitted).

Moreover, "individual class members need not be 'identically situated' to meet the commonality requirement." *Swigart*, 288 F.R.D. at 183 (*quoting Parkhill v. Minn. Mut. Life Ins. Co.,* 188 F.R.D. 332, 338 (D. Minn. 1999).   The key inquiry is not whether Plaintiffs have raised "common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 651 (D.N.M. 2015) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)).

A classwide proceeding to determine Defendants' liability will result in common answers

---

Mexico between June 19, 2009 and June 21, 2017.  *Thornburg*, 912 F. Supp. 2d at 1221 (*quoting Neiberger*, 208 F.R.D. at 313).

the following fundamental issues, and will thus "drive the resolution of the litigation":

a.  <u>Whether the Class Members were misclassified as exempt from overtime</u>.  Mewbourne

previously admitted to the Department of Labor that it misclassified *all Lease Operators*

*company-wide* under the Fair Labor Standards Act ("FLSA").  Dkt. 12-6 pp. 6, 15, 17. And

Mewbourne has clarified in its interrogatory responses that it "does not assert that Lease

Operators were exempt under the FLSA."  Dkt. 24-1 at 22 (Mewbourne's Resp. to

Interrogatory No. 15).  Although the FLSA is a distinct statute, the exemptions are in all

relevant respects the same and Defendants have not put forward any specific exemption

under the NM Wage Act.[7]  *See Rivera*, 240 F. Supp. 3d at 1155 ("New Mexico courts have

frequently looked to interpretations of the FLSA in order to interpret similar language in

the MWA.").  Given Mewbourne's admissions that it is not pursuing an exemption defense,

a classwide proceeding will necessarily generate a common answer to whether Lease

Operators were illegally misclassified as exempt from the overtime guarantees of the NM

Wage Act.

b.  <u>Whether the Class Members performed similar job duties</u>.  The Class Members' job duties

would be relevant to a claimed exemption from the overtime requirements of the NM Wage

Act (even though Defendant has not asserted one). Here, Plaintiff and the declarant Class

Members each testify that they had identical job duties. Dkt 12-1 ¶ 4; Dkt 12-3 ¶ 6; Dkt.

12-4 ¶ 6; Ex. A ¶ 4; Ex. B ¶ 5; Ex C ¶ 5; Ex D ¶ 5; Ex E ¶ 6; Ex F ¶ 6; Dkt. 44-1 ¶ 6; Ex G

¶ 5; Dkt. 44-2 ¶ 6; Ex H ¶ 4; Ex I ¶ 5.   And two of the declarants were Production

---

[7] During the initial stages of the DOL proceedings, the only exemption urged by Defendant Mewbourne was the Motor
Carrier Act exemption under the FLSA.  Dkt. 12-6 p. 2, 12, 14. The NM Wage Act does not have a Motor Carrier Act
overtime exemption.  And regardless, such an exemption would fail as the class members solely drove vehicles
weighing less than 10,000 pounds. Ex. J p. 4 (Mewbourne's Response to Request for Admission No. 11); Dkt 12-1 ¶
4; Dkt 12-3 ¶ 6; Dkt. 12-4 ¶ 6; Ex. A ¶ 4; Ex. B ¶ 5; Ex C ¶ 5; Ex D ¶ 5; Ex E ¶ 6; Ex F ¶ 6; Dkt. 44-1 ¶ 6; Ex G ¶ 5;
Dkt. 44-2 ¶ 6; Ex H ¶ 4; Ex I ¶ 5.

Foremen—supervisors of the class member Lease Operators—during the period covered by the purported class. Dkt 12-3 ¶ 5; Dkt. 12-4 ¶ 5. According to the Production Foremen, all of Mewbourne's Lease Operators had the same job duties. Dkt 12-3 ¶ 6; Dkt. 12-4 ¶ 6. Further, Defendant has produced a single job description for its New Mexico-based Lease Operators, thus suggesting that they have all performed the same job duties throughout the time period at issue in this case. Exhibit M.   Each of these pieces of evidence demonstrate how classwide litigation will produce a common answer to the factual question of whether Class Members had similar job duties. *See Jacob*, 289 F.R.D. at 415 ("Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.") (quoting *Youngblood,* 2011 WL 4597555 at *5).[8]

c.  <u>Whether the Class Members routinely worked over forty hours per week</u>. Again, the Class Member declarants uniformly testified that they regularly worked more than forty hours per week. Dkt 12-1 ¶ 6; Dkt 12-3 ¶ 8; Dkt. 12-4 ¶ 8; Ex. A ¶¶ 5-6; Ex. B ¶ 7; Ex C ¶ 7; Ex D ¶ 7; Ex E ¶ 8; Ex F ¶ 9; Dkt. 44-1 ¶ 8; Ex G ¶ 7; Dkt. 44-2 ¶ 8; Ex H ¶ 6; Ex I ¶ 7. Their supervisors, the Production Foremen, corroborate this evidence in their declarations.  Dkt 12-3 ¶ 8; Dkt. 12-4 ¶ 8; Ex. E ¶¶ 5, 8.  These common and uniform pieces of evidence provide a common answer to the question of whether the Class Members worked over forty hours per week.

---

[8] *See also Damassia,* 250 F.R.D. at 156-61 (certifying Rule 23 class action of overtime claims under New York Labor Law and concluding that plaintiffs satisfied the predominance requirement by, *inter alia,* demonstrating that the job duties of putative class members were "largely consistent" across the class and that individual differences in job tasks would not be of the "magnitude" to "cause individual issues to predominate").

d. <u>Whether Defendants paid the Class Members an overtime premium for hours worked over forty hours per week.</u>  Defendants admit in this litigation that they paid Class Members a salary for all hours worked and did not pay an overtime premium.  Exhibit L at p. 2; Exhibit J pp. 2-3 (Mewbourne's Response to Request for Admission Nos. 4, 5, 8); Dkt. 42 ¶ 31; Dkt. 43 ¶ 31.  Thus, a classwide proceeding will result in a common answer to the question of whether the Class Members were injured by Defendants' misclassification of them as overtime exempt.

e. <u>Whether Defendants' misclassification of Lease Operators constitutes a "continuing course of conduct."</u>  Defendants admit that Mewbourne paid *all* Lease Operators a salary with no overtime from the date they opened their Hobbs, New Mexico office (prior to June 19, 2009) until October 2016.  Dkts. 42, 43 ¶¶ 31, 42; Exhibit J pp. 2-3 (Mewbourne's Response to Request for Admission Nos. 4, 5, 8).  It is this evidence that Plaintiff contends establishes that Defendants' NM Wage Act violation constitutes a "continuing course of conduct."  N.M. Stat. Ann. § 50–4–32.  Therefore, classwide litigation will generate a common answer to whether Mewbourne's violation constitutes a "continuing course of conduct" such that Class Members' claims dating back to June 19, 2009 are timely under the NM Wage Act.

In short, this is another example of a wage and hour case in which the commonality element is easily satisfied. *See supra* note 4*; see also Swigart*, 288 F.R.D. at 185 ("Courts routinely certify misclassification cases with similar common questions because the central question of whether the employees were wrongfully classified as exempt from overtime pay requirements is common to the class."); *Abadeer v. Tyson Foods, Inc.*, No. 3:09-00125, 2009 WL 4110295, at *6 (M.D. Tenn. Nov. 25, 2009), as modified (Sept. 27, 2010) (finding commonality satisfied where "common questions of law and fact arise from Tyson's failure to pay the Plaintiffs and putative Class

Members all wages when due" and providing that to "the extent any variations exists among workers, the Court can create subclasses."); *Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 340 (M.D. Tenn. 2008) (commonality satisfied where "there are common questions of law and fact arising from SFSI's alleged failure to pay the Plaintiffs and putative class members all wages when due"). Because there are multiple common questions to the class in this case when "even a single common question will do," Plaintiff has established commonality under Rule 23(a)(2). *Dukes*, 564 U.S. at 359 (2011).

### 3. Plaintiff Satisfies the Typicality Requirement of Rule 23(a)(3).

Rule 23(a)(3) also requires that "the claims . . . of the representative parties be typical of the claims...of the class." Fed. R. Civ. P. 23(a)(3). The concepts of commonality and typicality "tend to merge" in practice because they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 564 U.S. at 349 n.5, (2011) (quoting *Gen. Tel. Co.*, 457 U.S. at 157–58 n. 13). "The United States Court of Appeals for the Tenth Circuit has said that the typicality requirement is satisfied if there are common questions of law or fact." *Gianzero v. Wal–Mart Stores Inc.,* No. 09–CV–00656–REB–BNB, 2010 WL 1258071, at *3 (D. Colo. Mar. 29, 2010) (*citing Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982)); *Adamson v. Bowen,* 855 F.2d at 676 ("[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." (citations omitted)).

Just as he has satisfied the commonality requirement, Plaintiff has likewise satisfied the typicality requirement because all the Class Members performed the same job duties and were uniformly compensated on a salary basis with no extra compensation for hours worked over forty

in a workweek. Similarly, Plaintiff and Class Members uniformly rely on the "continuing course

of conduct" doctrine to render claims reaching back to before August 22, 2015 (three years prior

to the filing of his lawsuit) timely under NM Wage Act § 50-4-32. Plaintiff and the class members

held identical positions, have identical factual and legal claims, and pursue those claims under the

same law, the NM Wage Act. Therefore, Plaintiff's claims are typical of those of the class and

Plaintiff meets the requirements of Rule 23(a)(3).

### 4. <u>Plaintiff Meets the Adequacy Requirement of Rule 23(a)(4).</u>

The adequacy requirement requires that "the representative parties will adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(3). Adequacy "will be found where the named

plaintiffs have no antagonistic or conflicting interests with those of the class and where class

counsel is qualified, experienced and able to conduct the proposed litigation." *Soseeah v. Sentry*

*Ins.*, No. 12-1091, 2013 WL 11327129, at *5 (D.N.M. Nov. 4, 2013). "Plaintiff's interests, in

seeking unpaid overtime wages resulting from alleged misclassification as an exempt employee in

violation of the [NM Wage Act], align with those of the class, who seek the same remedy arising

from the same alleged statutory violation. There is no evidence of any conflict of interest that

would prevent Plaintiff from fairly and adequately representing the interests of the class." *Ganci*

*v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249, 261 (S.D. Ohio 2017) (granting certification to

inspection personnel paid pursuant to day rate plan).  Similarly, here, there is no conflict of interest

between Plaintiff and the putative class.  Relatedly, because Plaintiff's claims are typical of the

claims of the class members, their interests are fully aligned.  *Gonzales v. City of Albuquerque*,

No. CIV 09–0520 JB/RLP, 2010 WL 4053947, *16 (D. N.M., August 21, 2010) ("Generally, if

the representatives' interests are coextensive with those of the rest of the class, they will not be

viewed as antagonistic, a key factor in determining the adequacy of representation.... 

Coextensiveness has also been viewed as part of the requirement in Rule 23(a)(3) that the claims

of the representatives be typical of those of the absent class members. Thus, courts have noted that coextensiveness is a common thread binding Rule 23(a)(3) and Rule 23(a)(4) together." (quoting 7A C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1768 at 389–93.)). Further, Plaintiff's counsel has extensive experience in complex cases, including class proceedings for unpaid overtime, and are therefore qualified, experienced and able to conduct the litigation. Accordingly, Plaintiff has met the adequacy requirement of Rule 23(a)(4).

### E.  Plaintiff meets the Rule 23(b)(3) requirements.

#### 1.  Common Questions of Law & Fact Predominate

"Classwide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127 (D. Colo. 2016) (quoting *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D. Okla. 2012). To determine whether plaintiffs have met this burden, the court considers the elements of the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.").  Predominance, however, "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 568 U.S. 455, 469 (2013). Rather, courts have "held that common questions predominated even though certain class members' circumstances varied and some of the defendant's practices would have to be proven by anecdotal testimony." *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. C-09-5803, 2011 WL 4017967, at *12 (N.D. Cal. Sept. 8, 2011) (certifying Rule 23 class based on claims under California law).

Here, Mewbourne admits to employing and uniformly misclassifying Lease Operators as exempt and paying its Lease Operators a salary with no overtime and doing so since before June 19, 2009. *Compare* Dkts. 42, 43 ¶¶ 31, 42; Exhibit J pp. 2-3 (Mewbourne Response to Request for Admission Nos. 4, 5, 8); *with Casias*, 2014 WL 12710236, at *13 ("The Court agrees with the conclusion that, in deciding whether an employer's uniform exemption policy is supported by common evidence sufficient to satisfy Rule 23(b)(3)'s predominance requirement, one of the relevant inquiries is whether the evidence demonstrates that the "employer exercised some level of . . . standardized corporate policies and procedures governing employees . . . and other factors susceptible to common proof. . . ." (internal citations omitted)).   Mewbourne also asserts no specific exemption defenses to justify its classification of the Lease Operator class members.  Dkt. 24-1 at 22 (Mewbourne's Resp. to Interrogatory No. 15).  Resolution of this case, then, will come down to *how much* each Class Member is owed in damages, not *whether* they are owed damages. *Accord Jacob*, 293 F.R.D. at 593 ("The only remaining question then will be how much each individual is owed. . . ." (internal citation omitted)).

Defendants will likely argue that determining the amount of damages for each Class Member will require an individualized inquiry.  But, as the Supreme Court has made clear, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).   In any event, Plaintiffs have limited, per Rule 23(c)(4), the requested class certification to liability issues only.  Because the central liability issues in this litigation are common and typical among the class—i.e. Class Members were "wrongfully classified as a statutorily exempt employee, and, as such, [were] never paid the overtime compensation to which

[they were] entitled"— they predominate over any potential individual issues. *Jacob*, 293 F.R.D. at 592.

### 2.   <u>Class treatment is superior to other alternatives.</u>

Rule 23(b)(3) requires that Plaintiff demonstrate that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Rule 23(b)(3) sets forth a list of factors that courts should consider when analyzing superiority. These include: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." *Id.* "Class actions are the superior method for resolving controversies when the main objects of Rule 23 are served, namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Stinson v. City of New York*, 282 F.R.D. 360, 383 (S.D.N.Y. 2012) (quoting *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 479–80 (E.D.N.Y. 2001) ((citing *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979)); *Barnes v. District of Columbia*, 242 F.R.D. 113, 123–24 (D.D.C. 2007) ("The second prong of Rule 23(b)(3) militates in favor of class actions where common legal or factual questions allow a court to consolidate otherwise identical actions into a single efficient unit.").

Given the number of potential Class Members, a class action is a superior method for adjudicating liability in this dispute. Certifying a class would promote judicial economy and avoid inconsistent results that might be occasioned by numerous individual lawsuits. This case is the first, and so far only, lawsuit begun by any Lease Operator against Defendants for unpaid overtime. Additionally, without class certification, it is likely that the NM Wage Act violations Plaintiff

alleges would go un-adjudicated because many of the Class Members do not possess the knowledge or resources to prosecute an action against Defendants, which have vastly superior resources compared to individual oilfield workers. *In re Montano*, 398 B.R. 47, 58 (Bankr. D.N.M. 2008) ("It is proper for the Court to consider the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."); *Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 239 (D.N.M. 2016) ("While the potential for higher individual recoveries exists, realizing that potential requires assuming that each putative class member is aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. Those transaction costs are not insubstantial and have prompted other courts in this Circuit to conclude that litigating as a class is superior."(citations omitted)); *Jancik v. Cavalry Portfolio Servs., LLC*, No. CIV 06–3104 MJD/AJB, 2007 WL 1994026, at *11 (D. Minn. July 3, 2007) ("[T]he truth is that the putative plaintiffs in this case are not likely to know their rights and are therefore not likely to pursue these claims on their own."); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 623 (C.D. Cal. 2015) ("Courts recognize that employer practices and policies with regard to wages and hours often have an impact on large numbers of workers in ways that are sufficiently similar to make class-based resolution appropriate and efficient."); *Rios v. Marshall*, 100 F.R.D. 395, 409 (S.D.N.Y. 1983) ("[T]he relatively small amount likely in any individual recovery, the availability of treble damages notwithstanding, renders certification of a plaintiff class in this action particularly appropriate.").

Finally, because there is no dispute that the Class Members were never paid overtime when paid on a salary-plus-bonus basis, allowing Rule 23 class treatment to the liability claims of the proposed class brings efficiency and expediency in deciding numerous claims in one case, instead of individual lawsuits. In sum, a class action is the superior alternative to adjudicate this case.

## IV. Conclusion and Prayer

For the foregoing reasons, Plaintiff respectfully requests that the Court certify a liability only class defined as:

> **All of Defendants' current and former Lease Operators who, in at least one workweek between June 19, 2009 and June 21, 2017, were paid a salary with no overtime and who worked for Defendants in New Mexico.**

Plaintiff additionally respectfully requests that the Court order that the parties confer regarding the content of the class notice under Rule 23(c)(2)(B) and provide the agreed Rule 23(c)(2)(B) notice—or the parties' remaining disagreements regarding Rule 23(c)(2)(B) notice—within fourteen (14) days of the Court's order. Plaintiff respectfully requests any other relief he is entitled.

Respectfully Submitted,

**MORELAND VERRETT, P.C.**

By: _/s/ Daniel A. Verrett_
       Daniel A. Verrett
       Texas State Bar No. 24075220
       daniel@morelandlaw.com
       The Commissioners House at Heritage Square
       2901 Bee Cave Road, Box L
       Austin, Texas 78746
       Tel: (512) 782-0567
       Fax: (512) 782-0605

       Edmond S. Moreland, Jr.
       Texas Bar No. 24002644
       edmond@morelandlaw.com
       700 West Summit Drive
       Wimberley, Texas 78676

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify that conferred with counsel for Defendants regarding the relief requested in this Motion.  Defendants are opposed to the relief requested in this motion.

/s/ *Daniel A. Verrett*

Daniel A. Verrett

## CERTIFICATE OF SERVICE

I certify that I filed this document using the Court's CM-ECF electronic filing service on May 23, 2019, which will notice all parties to this case.

/s/ *Daniel A. Verrett*

Daniel A. Verrett