UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JONATHAN FELPS, Individually and
On Behalf of All Others Similarly Situated,

    Plaintiffs,

v.                                                                                                  No. 18-811 MV/GJF

MEWBOURNE OIL COMPANY, INC.

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Amended Motion for Expedited Conditional Certification of Collective Action and Judicially-Supervised Notice Under Section 216(b) and Brief in Support ("Amended Motion") [Doc. 44]. The Court, having considered the Amended Motion and relevant law, finds that the Amended Motion is well-taken and will be granted.

## BACKGROUND

Defendant Mewbourne Oil Company is an oil and gas production company doing business in New Mexico, Oklahoma, and Texas. Doc. 36 ¶ 16. From 2014 to October 2016, Plaintiff Jonathan Felps worked as a Lease Operator, or Pumper, for Defendant at its Hobbs, New Mexico location. *Id.* ¶¶ 17-18. All of Defendant's Lease Operators perform the same job duties, namely, outdoor manual labor, including operating oilfield equipment, inspecting and maintaining oilfield equipment, monitoring oilfield equipment, and collecting and relaying data to supervisors for analysis. *Id.* ¶ 25.

1

In August 2016, the United States Department of Labor ("DOL") commenced an investigation into Defendant's practices of classifying its employees, through which it determined that Defendant had been misclassifying its Lease Operators as exempt from the overtime protections of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.   *Id.* ¶ 57.   Based on this misclassification, all Lease Operators employed by Defendants, including Plaintiff, were paid only a base salary and received no additional compensation for hours worked in excess of 40 hours a week.   *Id.* ¶ 23.

As a result of the DOL investigation, Defendant made back-wage payments to 53 of its Lease Operators and obtained DOL-approved releases from them.   Doc. 12 at 5.   Further, in October 2016, Defendant reclassified its Lease Operators as hourly, non-exempt employees entitled to overtime.   Doc. 36 ¶ 58.   It was not until June 21, 2017, however, that Defendant began paying its Lease Operators overtime for hours worked in excess of 40 hours a week. Doc. 44 at 2-3.

Plaintiff did not receive any funds as a result of the DOL investigation and did not sign any release of claims.   Doc. 36 ¶ 61.   Nor did Jammie Hobbs, who similarly worked as a Lease Operator at Defendant's Hobbs, New Mexico location, or Keenan Senter, who worked as a Lease Operator at Defendant's Canadian, Texas location.   *Id.* ¶¶ 62-63.

Plaintiff commenced this action "individually and on behalf of all others similarly situated" against Defendant, asserting violations of both the FLSA and the New Mexico Minimum Wage Act.   Doc. 36.   Soon thereafter, Plaintiff filed a motion seeking conditional certification of an FLSA collective action [Doc. 12], which he amended via the instant Amended Motion [Doc. 44].   Specifically, Plaintiff requests conditional certification of a class of "[a]ll persons who worked as a Lease Operator[] or Pumper for Defendant at any time between

October 31, 2015 and June 21, 2017." Doc. 44 at 3. Defendant opposes Plaintiff's request for conditional class certification.

## STANDARD

Under the FLSA, employers are required to pay overtime wages to regular employees for any work in excess of forty hours a week. 29 U.S.C. § 207(a). If an employer fails to comply with this requirement, an employee may bring an action to recover "unpaid overtime compensation" and "an additional equal amount as liquidated damages . . . for and in behalf of himself [] and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA thus "provides for a class action where the complaining employees are 'similarly situated.'" *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). Unlike "opt out" class actions under Rule 23 of the Federal Rules of Civil Procedure, however, "collective actions under the FLSA require affirmative consent by a current or former employee to join the class." *Aguilar v. Mgm't & Training Corp.*, No. 16-cv-050, 2017 WL 4277139, at *3 (D.N.M. Jan. 27, 2017); *see* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Thus, in order for putative plaintiffs to join an FLSA collective action, they "must affirmatively 'opt-in' to do so." *Aguilar*, 2017 WL 4277139, at *3.

Although Section 216(b) does not define the term "similarly situated," the Tenth Circuit has adopted a two-step approach to determine, "on an *ad hoc* case-by-case basis, whether plaintiffs are 'similarly situated.'" *Thiessen*, 267 F.3d at 1102. With this approach, the court "makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Id.* "That is, the court determines whether a collective action should be certified for purposes of

3

sending notice of the action to potential class members." *Aguilar*, 2017 WL 4277139, at *3 (citation omitted); *see also Foster v. Nova Hardbanding, LLC*, No. 15-cv-1047, 2016 WL 4492829, at *2 (D.N.M. Apr. 20, 2016) ("The purpose of this first step is for the court to determine whether the certification is appropriate for purposes of sending notices and consent forms to potential plaintiffs.") (citation omitted).

At the "initial notice" stage, "a court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. This is a "lenient standard" that "typically results in conditional certification of a representative class." *Aguilar*, 2017 WL 4277139, at *3 (citation omitted). Accordingly, "the court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiff's claims." *Id.* (citation omitted). "In general, if putative class members are employees with similar positions, allegations that the defendants engaged in a pattern or practice of not paying overtime [are] sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan." *Foster*, 2016 WL 4492829, at *2.

## DISCUSSION

I.      <u>Conditional Certification is Appropriate at this Initial Notice Stage.</u>

On the instant motion, Plaintiff asks the Court to conditionally certify a class of "all persons who worked as a Lease Operator[] or Pumper for Defendant at any time between October 31, 2015 and June 21, 2017." Doc. 44 at 3. In support of this request, Plaintiff argues that his declaration and the declarations of Senter and Hobbs, in addition to DOL investigation records, establish that (1) Defendant's Lease Operators had similar job duties and regularly worked more than 40 hours a week and (2) Defendant misclassified its Lease Operators as FLSA exempt and refused to pay them any overtime compensation. Doc. 12 at 8-9. Based on this

4

evidence, Plaintiff further argues that he has met his lenient burden of setting forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," thereby establishing that the proposed class members are similarly situated and that conditional certification thus is appropriate.   *Id.* at 9.

Defendant does not dispute, and therefore appears to concede, that Plaintiff and the other proposed class members are similarly situated.   Rather than also conceding that, as a result, conditional certification is appropriate at this initial notice stage, Defendant argues that Plaintiff's motion should be denied because he has not met the additional "burden" of providing "evidence that other, similarly situated employees would in fact be interested in joining this lawsuit."   Doc. 21 at 11.   Relying only on two out-of-circuit, unpublished, district court cases (*Harp v. Bran Hospitality, Inc.*, No. 17-cv-285, 2018 WL 3150347 (M.D. Ga. June 27, 2018) and *Clemons v. HB, Inc.*, No. 17-cv-417, 2018 WL 4539116 (N.D. Tex. Sept. 21, 2018)), Defendant suggests that, before granting conditional certification, this Court "should satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in.'" *Gonzalez v. Family Dollar Stores, Inc.*, No. 17-cv-2254, 2018 WL 4620813, at *3 n.3 (D. Kan. Sept. 26, 2018).

The Tenth Circuit, however, "has never adopted the requirement that plaintiffs demonstrate the existence of other employees who wish to opt into the litigation."   *Id.*   And while the Tenth Circuit has not "expressly rejected [this requirement] either," district courts within the Tenth Circuit have expressly, and soundly, done so.   *Id.*   For example, in *Reab v. Electronic Arts, Inc.*, the court found that requiring a plaintiff to establish the existence of other interested plaintiffs would conflict with the Supreme Court's mandate to apply the FLSA liberally and would place the plaintiff in a position of communicating with potential litigants without court supervision or guidance.   214 F.R.D. 623, 629 (D. Colo. 2002).   The *Gonzalez*

court agreed with this reasoning, and similarly declined to require such a showing from the plaintiffs before it. 2018 WL 4620813, at *3 n.3. Likewise, in *Courtright v. Bd. of Cty. Comm'rs of Payne Cty., Okla.*, the court concluded that "the Tenth Circuit would not require a showing of additional plaintiffs as a pre-condition to 'notice stage' certification." No. 08-cv-230, 2009 WL 1076778, at *3 (W.D. Okla. Apr. 21, 2009). In support of this conclusion, the *Courtright* court observed that the notice-stage determination is "made using a fairly lenient standard," and expressed concern that "requiring Plaintiff to provide evidence that absent class members wish to join this lawsuit [would simply encourage[] unsupervised communications between Plaintiff or his counsel and other potential plaintiffs." *Id.* at *3-4.

In light of *Thiessen's* directive that, at the "initial notice" stage, "*nothing more* than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" is required, 267 F.3d at 1102 (emphasis added), this Court agrees that the Tenth Circuit would not impose upon Plaintiff *something more*, as Defendant suggests here. Defendant's argument that Plaintiff bears the burden of demonstrating not only that there are similarly situated putative plaintiffs but also that those putative plaintiffs desire to opt into this lawsuit is at odds with Tenth Circuit authority and the well-reasoned decisions of district courts in this Circuit. The Court thus declines to impose upon Plaintiff a requirement that he demonstrate interest by others in joining this litigation. Because Plaintiff has undisputedly met his (only) burden of substantially alleging that he and the other proposed class members are similarly situated, conditional certification at this initial notice stage is appropriate.

II.     There is No Basis to Limit the Class as Requested by Defendant.

Defendant argues that if the Court conditionally certifies this collective action, it should impose two limits on the class proposed by Plaintiff. First, Defendant argues that only

individuals who worked at its Hobbs, New Mexico location should be included in the class, because Plaintiff has not produced evidence that the individuals in the purported class are similarly situated across a geographical area wider than Hobbs, New Mexico. Doc. 21 at 12. In support of this argument, Defendant notes that two of the three declarations submitted by Plaintiff in support of his motion are from individuals who worked at the Hobbs, New Mexico location, and that the third declaration is from an individual who worked at another location (namely, Canadian, Texas) but left before the relevant period. *Id.* at 12-13.

As Plaintiff aptly notes, however, the DOL records that he submitted in support of his Amended Motion unequivocally establish that Defendant admitted to misclassifying Lease Operators *on a company-wide basis*, and that the DOL determined that *all* such Lease Operators "were classified as exempt" but "did not meet the exemption requirements" of the FLSA. Doc. 12-6 at 5. Thus, regardless of whether the declarations of Plaintiff, Senter, and Hobbs alone would be sufficient to demonstrate similarity among Lease Operators across all of Defendant's locations, these declarations in conjunction with the DOL investigation records undoubtedly are sufficient to demonstrate that Defendant's Lease Operators company-wide were "together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102. It follows that a class of Lease Operators employed company-wide by Defendant is proper.

Next, Defendant argues that the Court should exclude from the class all individuals who, in connection with the DOL investigation, accepted payment from Defendant for unpaid overtime wages but did not sign a receipt generated by the DOL, "Receipt for Payment of Lost or Denied Wages, Employment Benefits, or Other Compensation," Form WH-58 (the "WH-58 Form"). Doc. 21 at 14. Citing *Kaiser v. At the Beach, Inc.*, No. 08-cv-586, 2010 WL 5114729 (N.D. Okla. Dec. 9, 2010), Defendant contends that Lease Operators who accepted payment

waived any right to bring an FLSA claim, regardless of whether they signed the WH-58 Form.

Although Plaintiff agrees that Lease Operators who executed the WH-58 Form effectively waived their claims under the FLSA, Plaintiff maintains that Lease Operators who merely cashed the settlement check without knowingly executing the WH-58 Form did not effectively waive their claims under the FLSA. In support of his position, Plaintiff correctly notes that *Kaiser* was not decided at the initial notice stage, but rather at a later stage in the proceedings on the defendant's motion for summary judgment. *Kaiser, supra; accord, Heavenridge v. Ace-Tex Corp.*, No. 92-cv-75610, 1993 WL 603201 (E.D. Mich. Sept. 3, 1993) (deciding merits of employer's waiver defense on motion for summary judgment in an individual case and not as a preemptive exclusion of claims of potential class members on motion for conditional certification of collective action). Notably, in an earlier decision, the *Kaiser* court had in fact conditionally certified a class including individuals who had negotiated settlement checks but did not sign the WH-58 Form. *Kaiser v. At the Beach, Inc.*, 08-cv-586, 2009 WL 4506152 (N.D. Okla. Nov. 24, 2009). In doing so, the court rejected the very argument Defendant makes here, holding that the issue of whether individuals who had accepted payment but had not signed the WH-58 Form waived their FLSA claims "must be reserved for later stages of the proceedings." *Id.* at *4.

The Court "finds premature [Defendant's] attempt to assert a defense of waiver in seeking to exclude" from the class Lease Operators "who have cashed settlement checks without signing" the WH-58 Form, as Defendant "has not established that those [Lease Operators] were aware that cashing the checks waived their FLSA rights." *Fortuna v. QC Holdings, Inc.*, No. 06-cv-16, 2006 WL 2385305, at *8 (N.D. Okla. Aug. 17, 2006) (citing *Thiessen*, 267 F.3d at 1103, for the proposition that "defenses available to defendant which appear to be individual to

8

each plaintiff" should be addressed during the second stage of the analysis). Indeed, there are no "facts supporting waiver [] presently before the Court." *Id.* Accordingly, at this initial notice stage, the Court will not exclude from the class Lease Operators who accepted payment but did not sign the WH-58 Form.

III.     Equitable Tolling is Appropriate Here.

FLSA actions must "be commenced within two years after the cause of action accrued," except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In order to be joined as a plaintiff in an FLSA case, an individual must file his or her consent to opt into the collective action within the relevant two- or three-year limitations period. *Abrams v. City of Albuquerque*, No. 10-cv-872, 2014 WL 11497810, at *2 (D.N.M. June 26, 2014). Importantly, "the filing of a complaint does not stop the statute of limitations from running in a collective action; rather, it is only the filing of a consent to opt-in that stops the limitations period from expiring." *Id.*

Equitable tolling, which the majority of courts have held to be an available remedy under the FLSA, "permits courts to extend statutes of limitations on a case-by-case basis to prevent inequity." *Id.* at *3. "The Tenth Circuit has held that equitable tolling of time limitations is appropriate where the circumstances of the case rise to the level of actual deception, where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts, or where a plaintiff has in some extraordinary way been prevented from asserting his or her rights." *Id.* (citations omitted). Courts are generally "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his or her legal rights." *Id.* (citation omitted). Ultimately, "the decision to invoke equitable tolling in a particular case lies within the sound discretion of the trial court." *Id.*

In *Abrams*, this Court held that "undue delay arising from a court's deliberation on a motion for certification constitutes an extraordinary circumstance that merits tolling the statute of limitations." *Id.* at *10. Applying that principle to the case before it, where the plaintiffs had "diligently preserved their right to assert equitable tolling of their claims for willful violations from the date they filed their Second Motion for Certification," *id.* at *8, the Court found that the one-year delay between the plaintiffs' filing of their motion and the Court's decision granting the motion was "sufficiently protracted to constitute an extraordinary circumstance" meriting the application of the doctrine of equitable tolling. *Id.* at *11. The Court further noted that tolling was "particularly appropriate" because the plaintiffs "demonstrated that they [] promptly and actively pursued their collective claims" and that the "delay was beyond their control." *Id.* The Court also noted that the defendant did not argue, and the facts did not demonstrate, that the defendant "would be prejudiced or surprised by the addition of opt-in plaintiffs." *Id.* Thus, the concerns to which statutes of limitations are addressed, namely, "to ensure fairness to defendants and to notify them of claims that they must defend before the claims grow stale," were not at issue. *Id.*

Plaintiff asks the Court to apply *Abrams* to provisionally toll the statute of limitations as to the class members' claims. The Court agrees that, under *Abrams*, tolling is appropriate here. First, as in *Abrams*, Plaintiff "diligently preserved" his right to assert equitable tolling of his claims from the date that he filed his original motion for conditional certification. *Id.* at *8. Plaintiff also reiterated that right in his Amended Motion. Plaintiff "promptly and actively pursued his collective claims," filing his original motion just over two months after commencing this action. *Id.* at *11. The delay in this Court's decision-making process, occasioned by its busy docket, was "beyond" the control of Plaintiff and the potential class members. *Id.*

10

Defendant has not argued or shown that it would be prejudiced or surprised by the addition of opt-in plaintiffs. Indeed, as was the defendant in *Abrams*, "Defendant was aware of the claims when Plaintiffs filed their lawsuit," and "also was aware, by virtue of the complaint's [collective] allegations, that opt-in plaintiffs might join the suit." *Id.*

Defendant opposes Plaintiff's request for equitable tolling, arguing that this case is distinguishable from *Abrams* because the exceptional circumstance present there, namely, court delay, is not equally present here. Though that may have been true at the time Defendant filed its response, unfortunately it no longer is the case. At this juncture, it has been 14 months since Plaintiff filed the instant motion. Under *Abrams*, the delay between Plaintiff's filing of his motion and this Memorandum Opinion and Order is "sufficiently protracted to constitute an extraordinary circumstance" meriting the application of the doctrine of equitable tolling. *Id.* at *11.

The Court thus will grant Plaintiff's request to provisionally toll the limitations period for any opt-in class member from the date on which Plaintiff filed his original motion through the date on which this Memorandum Opinion and Order is entered. Accordingly, class members who were employed by Defendant dating back to October 31, 2015 will be entitled to receive notice of their claims.

IV.     Notice of this Collective Action to Potential Plaintiffs

Because opt-in plaintiffs must consent in writing to join a collective action, 29 U.S.C. § 216(b), "counsel representing parties in FLSA actions send prospective class members notices to inform them about the lawsuit." *Aguilar*, 2017 WL 4277139, at *6. "Employees must receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Id.* (quoting *Hoffman-La Roche Inc. v.*

11

*Sperling*, 493 U.S. 165, 170 (1989)).   The district court has "discretion to approve the content of FLSA class notices."   *Aguilar*, 2017 WL 4277139, at *6 (citing *Hoffman-La Roche*, 439 U.S. at 170).

Plaintiff asks the Court to exercise its discretion to approve the Notice that he intends to distribute to putative collective members in the form attached to his Amended Motion as Exhibit C, and makes several additional requests related to the Notice.   Defendant appears to consent to the language of the proposed Notice and to Plaintiff's related requests, subject to the following objections.

First, Defendant argues that, in order to accurately reflect the position of each party and to avoid confusion, in response to the first question set forth in the Notice ("Why Are You Getting this Notice?"), the following language should be added:

> Mewbourne denied that it willfully violated the FLSA.   **This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this lawsuit.   The Court has not yet determined whether Plaintiff or Mewbourne is right.**

Doc. 21 at 22 (emphasis in original) (citing *LeBlanc v. Halliburton Co.*, 17-cv-718, 2018 WL 4562384, at *3 (D.N.M. Sept. 24, 2018)).   Plaintiff agrees to add language to reflect Defendant's position and the neutrality of the Court, but argues that, because Defendant has admitted that it violated the FLSA and only contests whether that violation was willful, the first sentence of Defendant's proposed language should be revised to read, "Mewbourne does not contest that it violated the FLSA by classifying its Lease Operators as exempt from overtime but denies that it willfully violated the FLSA."   Doc. 24 at 9.

Defendant has not objected to Plaintiff's proposed revision and, given the fact that Defendant indeed has admitted to misclassifying Lease Operators in violation of the FLSA, the Court will order that the additional language proposed by Defendant be added to the Notice, with

12

the revision proposed by Plaintiff.   Accordingly, the response to the first question set forth in the Notice ("Why Are You Getting this Notice?") shall be revised to include a second paragraph, as follows:

> Mewbourne does not contest that it violated the FLSA by classifying its Lease Operators as exempt from overtime but denies that it willfully violated the FLSA. **This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this lawsuit.   The Court has not yet determined whether Plaintiff or Mewbourne is right.**

Next, Defendant objects to Plaintiff's request that he be permitted to send the Notice not only by mail and email message but also by text message, and his further, related request that, in order to effectuate notice by text message, Defendant be required to provide Plaintiff with all known telephone numbers of the potential opt-in plaintiffs.   According to Defendant, because Plaintiff has not shown that notice by mail and email would be ineffective, notice by text message "would be redundant."   Doc. 21 at 19.   Citing to several out-of-circuit, district court cases, Defendant argues that "[c]ourts nationwide have rejected text-message notice – particularly where they have authorized notice by mail and email – absent evidence that notice by text is necessary."   *Id.*   Also in reliance on out-of-circuit, district court cases, Defendant further argues that "[d]isclosure of telephone numbers [] is an unnecessary invasion of potential plaintiffs' privacy."   *Id.* at 20.

As Plaintiff correctly notes, however, courts within this district routinely approve notice by mail, email message, *and* text message.   *See, e.g., Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) (noting that the law regarding notice by text message is "on Plaintiff's side," that "[c]ourts have recognized that notice by email and text is reasonable in today's mobile society[,] and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved");

*Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129-30 (D.N.M. 2017) (allowing notice by email and text message because such communication would increase the chance of the class members receiving and reading the notice, and noting that courts "have authorized notice by text message, observing that such notice is likely to be a viable and efficient means of communicating with many prospective members of a collective action") (citations omitted). In order to effect notice by text message, Plaintiff must have access to the potential plaintiffs' telephone numbers. Accordingly, the Court will allow notice by mail, email message, and text message, and will order that Defendant provide Plaintiff with the telephone numbers necessary to effect notice by text message.

## CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's request for conditional certification of the class as proposed by Plaintiff, provisionally toll the statute of limitations as to potential plaintiffs, and allow Plaintiff to provide notice to putative class members by mail, email, and text message in conformity with the form of Notice attached to Plaintiff's Amended Motion, with the above-noted revision.

**IT IS THEREFORE ORDERED** that Plaintiff's Amended Motion for Expedited Conditional Certification of Collective Action and Judicially-Supervised Notice Under Section 216(b) and Brief in Support [Doc. 44] is **GRANTED**, as follows:

(1) This case is conditionally certified as a collective action under 29 U.S.C. § 216(b) and will proceed as such until further order of the Court. The class members shall include:

> **All persons who worked as a Lease Operator or Pumper for Defendant at any time between October 31, 2015 and June 21, 2017.**

(2) The Court authorizes the expedited issuance of the Notice of Collective Action and Consent Form (the "Notice and Consent") that Plaintiff filed as Exhibit C to Plaintiff's

14

Amended Motion, with the following paragraph added after the paragraph that now appears in response to the first question ("Why Are You Getting this Notice?"):

> Mewbourne does not contest that it violated the FLSA by classifying its Lease Operators as exempt from overtime but denies that it willfully violated the FLSA. **This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this lawsuit.   The Court has not yet determined whether Plaintiff or Mewbourne is right.**

(3)     The Notice and Consent shall be delivered or otherwise disseminated by mail, email, and a website solely dedicated to disseminating the Notice and Consent.

(4)     The Court authorizes the expedited issuance of the Text Message Notice filed as Exhibit D to Plaintiff's Amended Motion, to be delivered or otherwise disseminated by text message.

(5)     Plaintiff is authorized to offer the putative class members the option to consent to join this collective action through the use of electronic signatures.

(6)     The parties shall comply with the following schedule:

    (a)     No later than 10 days from the date of entry of this Memorandum Opinion and Order, Defendant shall provide to class counsel in Excel (.xlsx) format the following information regarding all putative class members:   full name; last known mailing address(es) with city, state, and zip code; all known email addresses(es); beginning date(s) of employment; ending date(s) of employment (if applicable); and telephone number(s).

    (b)     Within 30 days of receiving the contact information for all putative class members, class counsel shall send a copy of the Notice and Consent to the putative class members by First Class United States mail and electronic mail; class counsel may send the Text Message Notice of Collective Action through text message; and class counsel may make the Notice and Consent available on a website solely dedicated to disseminating notice.

(c) Within five days of the initial mailing and emailing of the Notice and Consent, class counsel shall file an advisory with the Court indicating the date of initial delivery of the Notice and Consent.

(d) The putative class members shall have 60 days from the date of initial delivery of the Notice and Consent to return their signed consent forms to class counsel for filing with the Court (the "Notice Period").   After the Notice Period has closed, Defendant may remove the Notice and Consent that it has posted.

DATED this 18th day of May, 2020.

_____
MARTHA VAZQUEZ
United States District Judge