**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| JONATHAN FELPS, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| | § | Civil Action No. |
| Plaintiffs, | § | |
| | § | 2:18-CV-811 MV-GJF |
| V. | § | |
| | § | |
| MEWBOURNE OIL COMPANY, INC. and D. DREW GREENE, | § § | |
| | § | |
| Defendants. | | |

---

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

---

Plaintiff Jonathan Felps, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), files this Motion for Preliminary Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23(e). Defendants do not oppose the relief requested in this Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiff Jonathan Felps filed this case on August 22, 2018. (Dkt. 1). Felps and the Class Members worked as Lease Operators for Mewbourne Oil Company in New Mexico, had the same job duties, were paid a salary, and were not paid any additional compensation for their overtime hours. They were each misclassified as exempt from the overtime protections of both the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). Felps contends that Defendant violated the Fair Labor Standards Act 29 U.S.C., § 201, *et seq.* and the New Mexico Minimum Wage Act, N.M. STAT. § 50-4-19, *et seq.* by misclassifying its Lease

Operators as exempt from the requirements of both statutes and failing to pay them at time and a half for all hours they worked over 40 in a workweek.

On May 18, 2020, the Court granted Plaintiff's motion for conditional certification of a collective action under the FLSA, 29 U.S.C. § 216(b). (Dkt. 111). Seven more individuals opted into the case. (Dkts. 124-127, 129-130). One of those individuals, Daniel Dowhower, withdrew his consent on May 11, 2022. (Dkt. 159). Consequently, there are currently seven plaintiffs—including Felps--with claims under the FLSA.

On July 15, 2020, the Court granted in substantial part Plaintiff's Motion for Corrective Notice, seeking, among other relief, to invalidate releases Defendants obtained from class members during a company meeting in May 2019. (Dkt. 121). In its July 15 Order, the Court determined that, in obtaining the releases from the then-putative class members, Defendants had utilized oral and written communications that "were confusing and misleading and had a potentially chilling effect on participation in this lawsuit." (Dkt. 121, *15). Therefore, the Court "fashion[ed] remedial measures to dispel any confusion or misunderstandings and to ensure participation in the lawsuit by those who otherwise would want to participate . . ." *Id.* Among other things, while the Court did not then invalidate the releases, as Plaintiff had requested, the Court ordered that should the Court later certify a Rule 23 class, "any individual who signed a Release will be notified of the right to invalidate that Release and to participate in this action for purposes of pursuing NMMWA claims against Defendants." *Id.*

On November 16, 2020, the Court certified a liability-only class action under Rule 23(b)(3) for claims under the New Mexico Minimum Wage Act. (Dkt. 134). The Court certified the following class:

> [A]ll of Defendants' current and former Lease Operators who, in at least one workweek between June 19, 2009 and June 21, 2017, were paid a salary with no overtime and who worked for Defendants in New Mexico.

(*Id.*, *33). In addition, the Court reiterated its July 15, 2020 holding that "any individual who signed a Release [shall be notified] of the right to invalidate that Release and participate in this action for purposes of pursuing NMMWA claims against Defendants." *Id.* The Tenth Circuit Court of Appeals denied Defendants' petition for leave to appeal this decision on February 19, 2021. (Dkt. 137).

On November 1, 2021, Plaintiff sent out notice of class certification pursuant to Rule 23(c)(2)(B) and, consistent with the Court's July and November 2020 orders, a notice regarding the rights of those class members from whom Defendant obtained releases. (Dkts. 146, 147). Following the issuance of those notices, 15 class members opted out of the class; and the Rule 23 class now numbers 122.[1]

In accordance with the Court's July and November 2020 Orders, on January 26, 2022, Felps filed a Motion to Invalidate Certain Releases. (Dkt. 150). The Court extended the deadline to respond to that motion until October 28, 2022. (Dkt. 158). As a result, that motion remains pending. On February 24, 2022, the Court issued an order setting pretrial deadlines and a briefing schedule. (Dkt. 156). Throughout the more than four years of litigating this case, the parties engaged in extensive written discovery and depositions.

Following the conduct of substantial, although not complete discovery, on August 11, 2022, the parties attended a full day mediation with Eric Galton of Austin, Texas. As a result of that mediation, the parties reached an agreement to resolve this case (none of which shall revert to Defendants), which they have reduced to writing in their Settlement Agreement. The parties have

---

[1] There are two additional individuals who are FLSA opt-in class members only. Thus, 124 individuals will benefit from the proposed settlement of this case. Also, of the 122 Rule 23 class members with NMMWA claims, five have also opted into the FLSA class. In sum, there are 122 individuals with NMMWA claims, five of whom also have FLSA claims, and two individuals who have only FLSA claims.

filed that Settlement Agreement pursuant to Rule 23(e)(3). Felps now moves for an order preliminarily approving the Parties' settlement in this case and giving notice of the settlement to class members. *See* Fed. R. Civ. P. 23(e)(1)(B) and 23(e)(2).

## II. ARGUMENT AND AUTHORITIES

Rule 23(e) governs the settlement of Rule 23 class actions. Rule 23 class actions "may be settled . . . only with the [C]ourt's approval." Fed. R. Civ. P. 23(e). Further, "[t]he parties must provide the [C]ourt with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). In the case of Rule 23(b)(3) classes, such as this one, that notice must give class members "a new opportunity to request exclusion" in the notice of proposed settlement. "The Court must provide preliminary approval and direct that notice be sent to all class members if it finds that it 'will likely be able to' approve the proposed settlement." *Cisneros v. EP Wrap-IT Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2021 WL 2953117, *5 (D.N.M. July 14, 2021) (*citing* Fed. R. Civ. P. 23(e)(1)(B); Newberg on Class Actions § 13:13 (5th ed. 2021)).

Rule 23(e)(2) sets forth the factors that the Court must consider when determining whether to approve the proposed settlement. "If the proposal would bind class members, the [C]ourt may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and Class Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

The Tenth Circuit provides a separate four-factor test for the approval of class action settlements. *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (*citing In re Motor Fuel Temperature Sales Pracs. Litig.,* 872 F.3d 1094, 1116–17 (10th Cir. 2017)). Under those factors, known as the *Rutter* factors, the Court must consider:

"(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable."

*Id.*; *see also, Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir. 2002).[2]

All of these factors have been satisfied. The Court should thus find that it will likely be able to approve the proposed settlement, and issue notice of the proposed settlement to the class.

---

[2] At least one court in this district has applied only the Rule 23(e)(2) factors when making a preliminary approval decision. *EP Wrap-It*, 2021 WL 2953117 at *6. That court so held because it found that the first three of the Tenth Circuit's factors overlap with the Rule 23 factors; and "the fourth . . . factor cannot be adequately assessed until absent class members have had an opportunity to object." *Id.* (*citing Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 762 (10th Cir. 2020) (unpublished)). Regardless, Felps here addresses each factor required by Rule 23 and *Rutter*.

**A. The Court Should Approve the Proposed Settlement Under Rule 23 and Authorize Notice of the Settlement to Class Members.**

**1. Adequacy of Representation**

The class has been well represented in this case. "The first factor focuses 'on the actual performance of counsel acting on behalf of the class.'" *Montgomery v. Continental Intermodal Group-Trucking, LLC*, Civ. No. 19-940 GJF, 2021 WL 1339305, *4 (*quoting* Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). First, both Mr. Verrett and Mr. Moreland are experienced employment law attorneys who have handled numerous class and collective actions under the Fair Labor Standards Act and the New Mexico Minimum Wage Act. Mr. Verrett has been practicing employment law for 12 years; and Mr. Moreland has been practicing employment law for 25 years. Both Verrett and Moreland are Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization. Consequently, in opposing class certification, Defendants did not contest the adequacy of the representation that either the undersigned or Felps would provide. (*See* Dkt. 134 at *6).

Moreover, as discussed in more detail in the following subsections, Class Counsel have more than adequately represented the class in this hotly contested case for the past four years now. They have filed and opposed the motions necessary to permit them to bring the litigation to a point to where they could obtain a substantial settlement on behalf of the class. Counsel for the parties have exchanged substantial amounts of information in the form of documents and electronically stored information, and both sides have taken a sufficient number of depositions to permit them to make an assessment of the Plaintiffs' claims. This exchange of information has given Class Counsel a substantial appreciation for both the factual and legal issues at stake in this case, which guided their negotiations with the Defendants. *See Anderson Living Trust v. Energen Resources*

*Corp.*, CV No. 13-909 WJ/CG, 2021 WL 3076910, *3 (D.N.M. July 21, 2021) (finding Class

Counsel adequately represented the class under such circumstances).

### 2. Arm's-Length Negotiations

"The second factor focuses on whether the settlement negotiations 'were conducted in a

manner that would protect and further the class interests.'" *Montgomery*, 2021 WL 1339305 at *5

(*quoting* Advisory Committee Notes, Fed. R. Civ. P. 23). As noted, this case has been hotly

contested from its inception. Felps filed opposed motions to certify a collective action under the

FLSA (Dkts. 12, 44) and to certify a Rule 23 class action for the New Mexico Minimum Wage

Act claims at issue in the case (Dkt. 62). The Court granted both motions. The motion for Rule 23

class certification, in particular, required extensive discovery and investigation in order to establish

the facts forming its basis. (*See* Dkts. 62-1 through 62-14). Following the class certification order,

Defendants sought leave to appeal from the Tenth Circuit; and Felps's counsel successfully

opposed that petition. (Dkt. 137).

In addition, as noted above, the day after Felps filed his motion for class certification, he

filed a motion for corrective notice because of what he believed were Defendants' inappropriate

communications with the then putative class that resulted in 45 current class members purporting

to release their New Mexico Minimum Wage Act claims that were the subject of the class action.

(Dkt. 64). Finally, following class certification, Felps filed a motion to invalidate the releases that

were the subject of his motion for corrective notice. (Dkt. 150). *EP Wrap-It*, 2021 WL 2953117 at

*6 (finding arm's-length negotiation because the parties had several disputes, including a motion

to dismiss, the employer contested conditional certification, and discovery disputes; and

Magistrate Judge Fouratt assisted the parties in reaching a settlement).

After the parties engaged in substantial additional discovery following class certification,

they proceeded to a full day mediation on August 11, 2022 before Eric Galton. Mr. Galton is a

highly respected mediator for class and collective wage and hour cases. Although the case was not settled on the day of mediation, with Mr. Galton's assistance, the parties eventually reached an agreement in principle to resolve this matter on August 15, 2022. The parties then worked for several months to work out the details of the agreement that eventually resulted in the proposed settlement agreement that the parties have filed for the Court's consideration. *Montgomery*, 2021 WL 1339305, *5 (finding an arm's-length negotiation and non-collusive settlement where an experienced, independent mediator was involved, and the settlement occurred after meaningful discovery and negotiation between competent, experienced counsel.)

In short, both the litigation and settlement discussions "were conducted in a manner that would protect and further the class interests."

### 3. Adequacy of the Relief Provided Taking Into Account the Costs, Risks, and Delay of Trial and Appeal

"The third factor recognizes that while the 'relief that the settlement is expected to provide to class members is a central concern,' such relief must be viewed in relation to 'the cost and risk involved in pursuing a litigated outcome.'" *Montgomery*, 2021 WL 1339305 at *5 (*quoting* Advisory Committee Notes, Fed. R. Civ. P. 23). In determining whether this factor is satisfied, the Court considers whether "[t]he relief provided by the Settlement is adequate, taking into account the costs, risk, and delay of trial and appeal; the effectiveness of the proposed method of distribution; and the terms of the proposal for awarding attorneys' fees, including the timing of payment." *Id.* "Where both sides face significant uncertainty, the attendant risks favor settlement." *Id.* at *4 (*citing In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014)). As the proposed settlement provides substantial monetary relief to class members, particularly considering the significant and manifold litigation risks that they face should they proceed, this factor is satisfied here.

There are many factual and legal issues that make it highly likely that, absent the proposed resolution, this litigation continues for years through trial and appeal. At the outset, there is a significant factual dispute that increases the risk of trial and appeal. While Defendants do not appear to contest that the Lease Operators were misclassified as exempt, they do contend that the Lease Operators rarely worked overtime hours. Indeed, Defendants' expert witness, Dr. Paul D. White, opined that Plaintiff Felps worked an average of 32.2 hours per week, and only 97 hours of overtime, in the 86 weeks (one and two-thirds year) that he was employed by Defendants. *See* Exhibit A. That equates to roughly 1.13 hours of overtime per week, while Felps contends that he worked, on average, more than 10 hours of overtime per week. If, at trial, the Court were to adopt Dr. White's conclusions, it would award Felps only a few thousand dollars in overtime damages under the New Mexico Minimum Wage Act. His relief (before a service award) is more than fifteen times that amount under the proposed settlement and distribution model. Moreover, Defendants provided Dr. White's opinions before the Court certified the class; and they would likely have obtained an expert opinion regarding at least a representative sample set of the entire class should the case have proceeded toward trial. Of course, Felps would then have retained his own expert, which would substantially increase the costs of continuing to litigate this case.

There are also several significant legal disputes between the parties that heighten the risk of trial and appeal. The first relates to the NMMWA's remedies for overtime violations. Felps contends that the NMMWA provides for treble damages should he prevail at trial. *See* N.M. Stat. 50-4-26(C).[3] However, Judge Vázquez has held that, while damages for minimum wage violations

---

[3] That section provides: "In addition to penalties provided pursuant to this section, an employer who violates any provision of Section 50–4–22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."

are trebled under the statute, damages for overtime violations are not. *Garcia v. Crossmark, Inc.*, 157 F.Supp.3d 1046, 1052-53 (D.N.M. 2015) (Vázquez, J.). Approximately three years after Judge Vázquez issued her decision in *Garcia*, Judge Brack came to the opposite conclusion, holding that Section 50-4-26(C) provides for treble damages for both minimum wage and overtime violations. *Armijo v. FedEx Ground Package Sys., Inc.*, 285 F.Supp.3d 1209, 1219-24 (D.N.M. 2018). In so holding, Judge Brack discusses *Garcia* at length and explains in detail why he disagrees with its conclusion. *Id.*[4] Since *Armijo* came down, however, there have been no new opinions addressing the issue. Most significantly in terms of assessing the risks of trial, there is no indication whether Judge Vázquez will adhere to *Garcia*, or whether she will adopt the reasoning of *Armijo*. Since only seven of the 122 class members have a FLSA claim, if Judge Vázquez follows *Garcia*, 115 of the class members would be left only with their overtime damages with no enhancement.[5]

The second major legal issue involves the statute of limitations for NMMWA claims. The default statute of limitations under the Act is three (3) years. However, effective June 19, 2009, NMMWA claims "may encompass all violations that occurred as part of a continuing course of conduct regardless of the date on which they occurred." N.M. Stat. Ann. § 50-4-32 (emphasis added). The Court, in certifying the Rule 23 class, stated that "this Court has interpreted Section 50-4-32 to mean that, 'where a continuing course of conduct is involved, there is essentially no limitations period for [a NMMWA] claim,' and the Court has found no authority to the contrary." (Dkt. 134, *30-*31 (*quoting Olivo v. Crawford Chevrolet, Inc.*, No. 10-cv-782, 2011 WL

---

[4] Magistrate Judge Garza had previously held that treble damages were available under the NMMWA for overtime violations. *Rivera v. McCoy Corp.*, 240 F.Supp.3d 1150, 1159 (D.N.M. 2017). However, *Rivera* does not discuss *Garcia* and does not contain the detailed legal analysis like that contained in *Armijo*.

[5] The FLSA also contains a liquidated damages provision that directs courts to double the damages incurred because of an employer's overtime violation if the employer is unable to prove that its violations were reasonable and committed in good faith. 29 U.S.C. §§ 216(b) and 260.

13137328, at *3 (D.N.M. Sept. 20, 2011)). Defendants included this holding among the matters that they sought leave to appeal to the Tenth Circuit; and they will certainly appeal it after final judgment if the case is not resolved. At the same time, if this holding is for some reason vacated prior to trial, Felps would, of course, appeal any such ruling. Should this holding be reversed, the effect would be to either eliminate entirely or reduce the potential recovery of a large percentage of the class. There are 55 class members whose damages are entirely outside of the three-year statute of limitations and an additional 47 members of this class whose damages extend beyond the default three-year statute of limitation. In percentage terms, if the Court's ruling on the statute of limitation were reversed, it would eliminate the recovery of 45% of the class, and reduce the potential recovery of an additional 38% of the class. In short, if the Court's decision on the statute of limitation is reversed, it would eliminate or reduce the recovery of 83% of the class.

Third, forty-five Class Members (36%) signed Releases which purport to release all their NMMWA claims in this case. Although the Court has ruled that they have the right to invalidate those Releases, the Court has not yet done so. Should the Court refuse to invalidate the Releases for these Class Members, Plaintiffs would appeal in due course. And, even if the Court invalidated those Releases and those Class Members obtained a favorable result at trial, Defendants would almost certainly appeal the invalidation of the Release. The proposed settlement allows each of these forty-five Class Members a substantial recovery for claims they have, according to Defendants, already released.Finally, Defendants strongly dispute the propriety of class certification in this case. (*See* Dkt. 68). They have already attempted to appeal that issue on one occasion (*see* Dkt. 137); and, even if the parties were to proceed to trial with the class intact, Defendants would almost certainly appeal the class certification decision again after final judgment (along with a host of other issues, some of which are discussed above). At the same time, it is highly likely that Felps would appeal any order decertifying the class and/or one or more

adverse decisions on the merits. The proposed settlement offers the class members a substantial recovery and it allows them to avoid the multiple risks of trial and appeal, including those listed above.

Moreover, the settlement will avoid significant and additional delays in this already four-plus year-old case. The parties had completed substantial discovery, but they had not completed all of it, by the time they reached their agreement. The additional discovery required will delay trial of the case. In addition, Defendant would almost certainly relitigate many, if not all, of the issues discussed above prior to trial, and that will further delay any trial. Additionally, the Court has certified this case as a liability-only class. That means that, even if Felps prevails at trial on the issue of liability (which Defendants vigorously contest), as things currently stand, each individual class member would have to prove up his damages at a series of mini-trials. Conducting these mini-trials will further delay the final disposition of this case. Finally, aside from these case-specific matters, given the "unprecedented backlog of criminal cases," and the fact that jury trials are "almost entirely devoted for the next 12-18 months [from April 2021] to resolving" them, it is unlikely that this case will be set for trial any time soon. *Montgomery*, 2021 WL 1339305 at *6.

In short, "[g]iven that outstanding questions of law and fact place the ultimate outcome of this matter in doubt, and considering the amount of potentially recoverable damages, the value of the class action settlement outweighs the mere possibility of future relief after protracted and expensive litigation." *Id.*

### 4. Adequacy of the Relief Provided Taking Into Account the Effectiveness of the Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims

"Under this factor, the court 'scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims' and 'should be alert to whether the claims process is unduly demanding.'" *Id.* (*quoting* Fed. R. Civ. P. 23 (Advisory Committee Notes)).

First, the method of distributing relief to the class is straightforward and commonly used in wage and hour litigation. It provides for a *pro rata* distribution of the settlement funds based on each individual class member's expected damages divided by the total of all expected damages for all class members. More specifically, the settlement provides that the Net Settlement Funds (defined as the gross settlement amount minus (1) Court-approved attorneys' fees and costs and (2) a Court-approved service award to the Named Plaintiff) shall be multiplied by the percentage generated from each inedividual Class Member's alleged reasonably expected damages as calculated by Class Counsel divided by the total combined alleged reasonably expected damages as calculated by Class Counsel. (*See* Settlement Agreement, Section 10.2).

The proposed method to process the claims is likewise straightforward. The settlement does not contemplate that class members need to submit a notice of claim form. *Cf. EP Wrap-It*, 2021 WL 2953117, *7 (noting that such a requirement "generally results in low participation," but that such processes are nevertheless commonly approved) (*citing McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 388 (S.D.N.Y. 2017)). Instead, following preliminary approval, the parties intend to send, through a third-party settlement administrator, a notice of proposed settlement that Felps is submitting with this motion as Exhibit B. That notice will describe the nature of the case, along with the class members' rights to opt-out pursuant to Rule 23(e)(4) and to object to the proposed settlement. To facilitate the class member's decision to opt-out or object to the settlement, the notice will also contain a proposed Initial Settlement Amount that the class member may expect to receive under the settlement. For the individuals who do not opt-out and upon final approval, the third-party settlement administrator shall send payment to the class members.

That payment will be at least as great as the Initial Settlement Amount set forth in the notice of settlement. That is because any unclaimed funds will not revert to Defendants. If any individual

opts out of the settlement or fails to negotiate their check, then their *pro rata* portion will be returned to the settlement fund to be either (1) re-distributed *pro rata* among the remaining class members (in the event the total unclaimed amount is equal to or exceeds an amount specified in the Settlement Agreement) or (2) granted to a Court-approved *cy pres* beneficiary (in the event the total unclaimed amount is less than the amount specified in the Agreement).

### 5. Adequacy of Relief Taking Into Account the Proposed Award of Attorney's Fees, Costs, and Expenses

"This factor recognizes that '[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement.'" *Montgomery*, 2021 WL 1339305 at *7, n. 6 (*quoting* Fed. R. Civ. P. 23 (Advisory Committee Notes)). Class Counsel seeks an award of attorney's fees equal to 37% of the gross settlement amount. This amount is in line with the contingent fee awards in other class action cases. *Id.*, n. 6 (collecting cases indicating that acceptable contingent fee ranges in class cases in the Tenth Circuit are between 30% and 40%); *see Blanco v. Xtreme Drilling & Coil Services, Inc.,* 2020 U.S. Dist. LEXIS 126155, 2020 WL 4041456, at *5 (D. Colo. July 17, 2020) (awarding 38% fee of $850,000 settlement in wage hybrid action because it was in "line with the customary fees and awards in similar cases"); *Peck v. Encana Gas & Oil, Inc.,* 2018 U.S. Dist. LEXIS 28630, 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018) (finding 37.5% fee in wage and hour hybrid action to be "well within the range for a contingent fee award") (collecting cases); *Whittington v. Taco Bell of America, Inc*., 2013 U.S. Dist. LEXIS 161665, 2013 WL 6022972, at * 6 (D. Colo. Nov. 13, 2013) (explaining that the fees and costs of 39% of the fund were "within the normal range for a contingent fee award" in wage and hour hybrid class action); *Enegren v. KC Lodge Ventures LLC*, 2019 U.S. Dist. LEXIS 177192, 2019 WL 5102177, at *9 (D. Kan. Oct. 11, 2019) (awarding 40% of fund in wage collective action).

14

The Tenth Circuit applies the *Johnson* factors in making fee award determinations in cases such as this. *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)). The twelve *Johnson* factors are:

> (i) the time and labor required; (ii) the novelty and difficulty of the question presented in the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment because of acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations the client or circumstances imposed; (viii) the amount involved and the results obtained; (ix) the attorneys' experience, reputation, and ability; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.

*Id.* at 483, n. 4. "[R]arely are all of the Johnson factors applicable*." Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).[6]

**Amount in Controversy and Results Obtained.** The most important factor is the results obtained. *Lane v. Page*, 862 F.Supp.2nd 1182, 1255 (D.N.M. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). As noted above, Defendants maintain that Plaintiff and the Class Members were owed substantially less than they have obtained by way of this settlement; and, as discussed below, the settlement provides 81.74% of the reasonable estimated damages to the class. Moreover, as discussed above, Defendants also maintain that approximately 80% of the class members should receive nothing or substantially less because of their contention that a three-year statute of limitations applies under the NMMWA. Felps was able to defeat Defendants' argument in this regard and obtain a recovery for a much larger group of workers. In short, Felps obtained an excellent result for the class.

---

[6] In *Acevedo v. Southwest Airlines Co.*, 2019 WL 6712298, *5 (D.N.M. Dec. 10, 2019), report and recommendation adopted 2020 WL 85132 (D.N.M. 2020, Jan. 7, 2020) (Vazquez, J.), the Court analyzed, directly or indirectly, all the factors except the eighth factor. Felps analyzes the same factors here.

**Time and Labor Required.** Class Counsel has been vigorously prosecuting this case for close to four and one-half years. As discussed above, the case involved several important and fiercely contested motions and a petition for leave to appeal to the Tenth Circuit.

**The Novelty and Difficulty of the Case / Skill Required / Attorney Skill and Reputation.** Felps has outlined in brief the history of this case and the manifold complex issues above. In short, this case involved the interplay of state and federal overtime laws as well as differing procedural mechanisms surrounding participation of the class members under the NMMWA and the collective action members under the FLSA. Additionally, this case involved issues regarding what Felps believed were Defendants' improper communications with the class, and those issues involve matters relevant to the First Amendment. Finally, Class Counsel have handled many wage and hour class and collective actions in this Court and across the country.

**Preclusion of Other Employment.** Given the magnitude of the case and the number of issues involved, Class Counsel were precluded from accepting other employment during most of the four plus years that it has been pending.

**Customary Fee / Whether Fixed or Contingent.** As discussed above, the requested fee is in line with other wage and hour fee awards. Class Counsel's fee in this case is entirely contingent on recovery and Class Counsel advanced all the substantial costs to prosecute this matter with no guarantee of recovery; and those facts weigh in favor of awarding the requested fee. *See Acevedo*, 2019 WL 6712298, *5 (citing and quoting *Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.")) As in *Acevedo*, "Plaintiff's Counsel assumed the risk that the litigation would yield no recovery and for years received no compensation for the time and expenses they spent during the litigation. The Court has recognized in other cases that fees in the range of 30–40% of any amount recovered are

16

common in complex and other cases taken on a contingent fee basis." *Acevedo*, 2019 WL 6712298 at *5 (cleaned up; internal quotations and citations removed).

**Undesirability of the Case.** Given the complex wage and hour issues involved in this case, which requires specialized skills and knowledge of Class Counsel, many lawyers would find this case undesirable, particularly on a classwide basis. *Id.* The Magistrate Judge's following observations regarding the undesirability of the case in *Acevedo* are equally applicable here:

> Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Class Members. Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. Yet, at every step of the litigation, Defendant could have succeeded. I accordingly find that this factor weighs in favor of approving the requested award for attorneys' fees and costs.

*Id.*

Finally, Class Counsel seeks the recovery of the substantial costs and expenses incurred in the prosecution of this case in an amount not exceeding $46,000, which includes the out-of-pocket costs of litigating the case along with the anticipated costs of securing settlement approval and the costs of the third-party settlement administrator. *Montgomery*, 2021 WL 1339305 at *8 (approving recovery of "[t]he out-of-pocket litigation expenses and costs incurred by Class Counsel") (*citing and quoting Candelaria v. Health Care Serv. Corp.,* No. 2:17-cv-404-KG-SMV, 2020 WL 6875828 at *4 (D.N.M. 2020) (in addition to awarding the cost of hiring a settlement administrator, court awarded Class Counsel all "actual out-of-pocket litigation expenses and costs incurred in prosecuting this case, including costs for court fees, electronic research, postage and courier fees, photocopies, and the fees of the private mediator[.]")).

### 6. Adequacy of Relief Taking into Account Any Agreement Required to Be Identified Under Rule 23(e)

"Under this factor, the parties are required [by Rule 23(e)(3)] to 'file a statement identifying any agreement made in connection with the proposal.'" *Montgomery*, 2021 WL 1339305 at *8. The parties have filed the Settlement Agreement with the Court. The parties have no other agreement between them pending guidance from the Court in response to this motion. *Id.*

### 7. The Proposal Treats Class Members Equitably Relative to Each Other

"The final factor seeks to prevent the 'inequitable treatment of some class members vis-a-vis others.' 'Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Id.*, *8 (*quoting* Fed. R. Civ. P. 23 (Advisory Committee Notes); internal citation omitted). As noted above, the Net Settlement Amount will be distributed *pro rata* based on the reasonable and realistic expected damages suffered by each individual class member. There are three additional issues that bear discussion regarding this factor: the first relates to the scope of the release relative to the FLSA claims that are being asserted in the case; the second relates to the service award, or incentive payment, that the Settlement Agreement contemplates for Felps; and the third relates to the consideration provided in connection with the purported releases that Defendants obtained in May of 2019.

Felps has asserted claims under two separate statutes: the FLSA and the NMMWA. Currently, there are five plaintiffs, including Felps, among the class with claims under both the FLSA and the NMMWA; two plaintiffs with only a FLSA claim; and 117 plaintiffs with claims under the NMMWA only. All plaintiffs with potential live FLSA claims (*i.e.*, claims that had not been validly released and that occurred within the three-year statute of limitations period under the

FLSA) received notice of the FLSA action. (*See* Dkts. 11 and 123). As noted above, six of those individuals opted into the FLSA action and did not withdraw their consents. (Dkts. 124-127, 129-130, 159). The five individuals, including Felps, with FLSA and NMMWA will receive a slight enhancement in exchange for their releases as the law currently permits plaintiffs to recover *both* liquidated damages under the FLSA and the NMMWA. *Rivera*, 240 F. Supp. at 1159 ("Despite the rule against double recovery, plaintiffs may recover liquidated damages under the FLSA, which are compensatory, and punitive damages under state minimum wage laws.") (*citing Evans v. Loveland Auto. Invs., Inc.*, 632 Fed. Appx. 496 (10th Cir. 2015) (unpublished) (utilizing similar logic and permitting recovery of damages under both the FLSA and the Colorado Wage Claim Act)). Although these five individuals, including Felps as the Named Plaintiff, will receive an enhancement to their consideration, because all putative plaintiffs with potential FLSA claims were given notice and the opportunity to opt into the case, there is no disparity in how the proposed settlement treats the class. Similarly, the two individuals with only FLSA claims will receive a slight reduction in their recovery to account for the fact that the FLSA permits only doubling their overtime damages, while the NMMWA, Felps contends, requires the trebling of those damages. Moreover, the individuals who are not receiving the slight enhancement will not be releasing their FLSA claims; and the two class members with only FLSA claims will not be releasing their NMMWA claims. *See EP Wrap-It*, 2021 WL 2953117 at *2 (discussing the fact FLSA claims could not be released unless the individuals opted into the FLSA action).

The settlement allocation also considers the risks associated with the claims of the Class Members in two additional respects. First, Class Members who signed a Release are receiving a reduction in their recovery relative to the Class Members who did not sign a Release. Second, Class Members whose claims entirely predate the NMMWA three-year statute of limitations—and thus rely on a finding that Defendants' conduct constituted a continuing course of conduct—are

receiving a reduction in their recovery compared to Class Members whose claims fall within the three-year statute of limitations.

The Settlement Agreement also provides for a $25,000.00 incentive payment to Felps. This case is over four years old. Felps initiated the case and has been instrumental throughout in its factual development. He has responded to discovery, given a deposition, assisted counsel with their extensive investigation of the facts, guided the litigation with the advice of his counsel, and helped prepare for and attended the mediation. In addition, the $25,000.00 incentive payment is consistent with awards given in other similar wage and hour cases. *Montgomery*, 2021 WL 1339305 at *9 (holding that a $25,000.00 service award is appropriate in a wage and hour case with a $4,175,000.00 settlement and collecting cases holding that service awards of up to $55,000.00 are acceptable in similar cases.)

Finally, the individuals who received the consideration of $1,000.00 per year of service in exchange for their purported releases will have their recovery offset by the amount of consideration that they received.

### B.  The Proposed Settlement Satisfies the Tenth Circuit's *Rutter* Factors

Many of the *Rutter* factors overlap those under Rule 23(e)(2). The first factor is whether the proposed settlement was fairly and honestly negotiated." *Id.* As in *Montgomery*, the proposal in this case "was the product of real, arms-length negotiations between experienced counsel well-versed in the legal and factual issues presented by this case. Each party was represented by competent counsel who conducted the litigation vigorously and professionally, and there is no indication or evidence that any party was unfairly pressured or coerced into agreeing to the Settlement." *Id.*, (citing *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137-38 (D. Colo. 2009)).

Second, as discussed in Part III.A.3. above, there are serious questions of law and fact that pose significant risk should this case proceed. Given those significant and manifold risks, Class Counsel are of the opinion that the proposed settlement is an excellent result and fair and reasonable to the class.

Third, against the backdrop of those significant risks, which could reduce[7] or eliminate[8] entirely the possibility of recovery for some or all of the class, the value of the immediate recovery that the proposed settlement provides far outweighs the possibility of future relief after what would certainly have been a protracted and expensive litigation. The settlement provides for a substantial non-reversionary settlement fund, which represents 81.74% of a reasonable recovery according to Class Counsel's damage calculations. *Cf. Montgomery* at *9-*10 (holding that a settlement fund consisting of a recovery of 65% of the damages as calculated by Class Counsel was an indication that the value of immediate recovery outweighed the benefit of continued litigation).

Finally, Class Counsel believe the settlement is fair and reasonable. As noted, both parties have been represented by competent and experienced counsel throughout this case and it is the

---

[7] If, for example, Judge Vazquez follows *Garcia* and rejects *Armijo* and again finds that the treble damages provision of the NMMWA applies only to minimum wage claims, that would reduce the class recovery by two-thirds; and, if the Court finds as a matter of fact that the class members worked very few overtime hours, as Defendant contends, that would further significantly reduce the recoverable damages in this case since Class Counsel's model of reasonably expected damages assumes an average of 10 hours of overtime worked per week for those individuals who did not testify about their alleged damages. For those individuals who did testify about the number of overtime hours they worked, Class Counsel's model includes those specific numbers of hours (which were sometimes higher, and sometimes lower, than the 10 hours.) In the opinion of Class Counsel, these assumptions adequately account for the reasonable risk that the Court agrees with Defendants' contention, discussed above, that the plaintiffs worked few overtime hours per week.

[8] If, for example, the Court decertifies the Rule 23 class, or the Tenth Circuit reverses the order certifying the Rule 23 class action, that would eliminate the NMMWA claims of everyone except for Felps. That would leave only one plaintiff with both an NMMWA and FLSA claim; and five others with FLSA claims. Also, as discussed above, if the Court's holding regarding the statute of limitations applicable to NMMWA claims is reversed, that would eliminate or reduce the recovery of over 80% of the class.

judgment of Class Counsel that the recovery in this case is an excellent result for the class. *Montgomery* at *10 ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006))); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *11-*12 (W.D. Okla. 2008).

### III. PROPOSED NOTICE OF PROPOSED SETTLEMENT TO THE CLASS

The Parties have agreed on the content of the proposed notice of proposed settlement to the class. Felps is submitting that proposed notice with this motion as Exhibit B and seeks an order granting him leave to send it to the class. Felps contends (and Defendants, who participated in its drafting, do not contest) that the proposed notice and the notice process (i) meet the requirements of Rule 23(c)(3) and due process; (ii) are the best practicable notice under the circumstances; (iii) are reasonably calculated, under the circumstances, to apprise applicable Class Members of their right to object to the proposed Settlement, exclude themselves from the settlement, or participate within the timeframe provided herein; and (iv) are reasonable and constitute due, adequate, and sufficient notice to all those entitled to receive notice.

Upon finding that the proposed notice and notice process satisfy these criteria, Plaintiff requests an order from the Court directing the third-party settlement administrator to disseminate the settlement notice by email and first-class mail within fourteen (14) days of the date of the order preliminarily approving the proposed settlement. Class counsel shall file a Notice with the Court indicating the date on which the administrator has sent out the notices within five (5) days of the administrator having done so. The Parties further propose that the Rule 23 Class Members have a total of 45 days to file an Exclusion Request from, or an objection to, the proposed settlement.

### IV. FINAL FAIRNESS HEARING AND BRIEFING SCHEDULE

Plaintiffs also move for an order scheduling a final fairness hearing 90 days after the settlement administrator initially sends out the notice. Plaintiffs propose that they file a motion for

final approval at least twenty (20) days before the final fairness hearing. In their motion for final approval and at the final fairness hearing, Plaintiffs shall ask that the Court: (i) determine finally whether the proposed settlement satisfies the applicable requirements of Rule 23; (ii) review objections, if any, regarding the Settlement Agreement; (iii) consider the fairness, reasonableness, and adequacy of the Settlement Agreement and its terms; (iv) consider Class Counsel's application for an award of attorneys' fees and reimbursement of costs; (v) determine the validity of any Exclusion Requests and exclude from the Class those persons who are eligible to exclude themselves under the terms set forth herein and who validly and timely exclude themselves by the Exclusion Date; and (vi) consider whether the Court shall issue the Final Approval Order and Judgment, approving the settlement and dismissing the Actions with prejudice.

### V. CONCLUSION

For these reasons, Plaintiffs request that the Court (1) preliminarily approve the proposed settlement reached by the parties, (2) authorize the proposed notice plan, approve the proposed notice, and authorize the parties to send the attached notice of settlement to class members; and (3) set a final fairness hearing and establish a briefing schedule for the motion for final approval of class action settlement. Plaintiffs request any other relief to which they are entitled.

Respectfully Submitted,

*/s/ Daniel A. Verrett*
Daniel A. Verrett
Texas State Bar No. 24075220
daniel@morelandlaw.com
Edmond S. Moreland, Jr.
Texas Bar No. 24002644
edmond@morelandlaw.com
**MORELAND VERRETT, P.C.**
700 West Summit Drive
Wimberley, Texas 78676
(512) 782-0567
(512) 782-0605 – telecopier

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify that counsel for Defendants have confirmed that Defendants are unopposed to the relief requested in this motion.

*Daniel A. Verrett*
Daniel A. Verrett

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 16th day of December, 2022, I filed this document using the Court's CM-ECF electronic filing service, which will notice all parties to this case.

*Daniel A. Verrett*
Daniel A. Verrett